**Ricky H. RALEY, Petitioner–Appellant,**

v.

**Al C. PARKE, Warden, Respondent–Appellee.**

**No. 90–5446.**

United States Court of Appeals,
Sixth Circuit.

Argued July 15, 1991.

Decided Sept. 19, 1991.

Ricky Harold Raley, pro se.

J. Gregory Clare, Mulloy, Walz, Wetterer, Fore & Schwartz, Louisville, Ky. (argued and briefed), for petitioner-appellant.

Frederic J. Cowan, Atty. Gen., Ian G. Sonego, Asst. Atty. Gen. (argued & briefed), Office of Atty. Gen. of Ky., Frankfort, Ky., for respondent-appellee.

Before BOGGS, Circuit Judge, BROWN, Senior Circuit Judge, and GIBBONS, District Judge.*

BOGGS, Circuit Judge.

Petitioner Ricky Raley appeals from the district court's denial of his petition for a writ of habeas corpus. We affirm in part and reverse in part, with instructions that Raley's conviction shall be voided unless

* The Honorable Julia Smith Gibbons, United States District Judge for Western District of Tennessee, sitting by designation.

Kentucky holds an evidentiary hearing that conforms to the procedures we established in *Dunn v. Simmons*, 877 F.2d 1275 (6th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1539, 108 L.Ed.2d 778 (1990).

## I

Raley's petition involves his conditional plea of guilty in state court in May 1987 to burglary and Persistent Felony Offender, class I ("PFO I").[1] A person is guilty of PFO I if he or she has been convicted previously of two felonies in addition to the current conviction. Raley had pled guilty previously to two felonies, a three-count indictment for burglary in 1980 and one count of burglary in 1981.[2] In his 1987 guilty plea, Raley reserved the right to challenge the validity of the two convictions forming the basis for his PFO I conviction.

The state trial court held a hearing on Raley's contention before accepting the conditional plea. The hearing followed the procedure established by *Dunn v. Commonwealth,* 703 S.W.2d 874 (Ky.1985), *cert. denied,* 479 U.S. 832, 107 S.Ct. 121, 93 L.Ed.2d 67 (1986), in cases involving challenges to the validity of earlier guilty pleas where there was no record of the earlier plea proceedings. That procedure involves a shifting burden of proof. First, the Commonwealth must establish the fact of conviction. Then, the petitioner must present evidence showing either that his rights were infringed upon or that the procedures used were irregular. If the petitioner meets this burden, the burden then shifts to the government to prove the validity of the underlying judgment. *Dunn,* 703 S.W.2d at 876.

The hearing showed that there was no record of any colloquy regarding Raley's plea between the trial judge and Raley in either the 1980 or the 1981 case. Raley testified that he was unaware of his constitutional rights to a jury trial, to confront and examine witnesses, and to remain silent when he pled guilty to either charge.

He testified that he had never had a trial, attended a trial, or paid attention to TV crime shows that featured trials. He also testified that the judge accepting his 1981 plea told him only that he had a right to a jury. He concedes that he does not remember the entire colloquies he had with both judges, and that the judges accepting his pleas in 1980 and 1981 might have informed him of his rights.

Kentucky offered some evidence at the hearing that both pleas were entered knowingly and intelligently. It offered the records of conviction for both pleas. It presented Raley's attorney for the 1980 charge, Tom Marshall, who testified that, although he could not independently recall his representation of Raley, his general practice was to inform his clients of their rights. Marshall also testified that he signed a "Certificate of Counsel" form attached to a "Plea of Guilty" form that detailed the constitutional rights a defendant would waive if he or she pled guilty. The certificate stated that Marshall had explained to Raley his constitutional rights. Raley did not object in any way to the discussions involving the certificate or the "Plea of Guilty" form. The Commonwealth also cross-examined Raley, who admitted signing the "Plea of Guilty" form for the 1980 conviction. Finally, it showed that Raley had spent nine months in the state penitentiary in 1980 around other inmates who had been convicted by juries.

The trial court ruled that Raley entered knowing and intelligent pleas in each case, and Raley then entered his conditional plea. On appeal, the Kentucky appellate court, in a decision rendered on April 22, 1988, affirmed the trial court's decision. The Kentucky Supreme Court subsequently denied review.

Raley then filed his habeas petition in federal district court. Upon request by the court, the Commonwealth supplemented the record of the trial court hearing with certified copies of the "Certificate of Coun-

---

1. A conviction for PFO I is punished by a mandatory ten-year sentence.

2. Raley also pled guilty to a charge of PFO II in 1981. A person is guilty of PFO II if he or she has one prior felony conviction.

sel" and "Plea of Guilty" forms for the 1980 plea. Raley did not object to the entry of these documents into evidence. The "Plea of Guilty" form, signed by Raley, includes a section at paragraph 11 that reads as follows:

I understand that I may, if I so choose, plead "Not Guilty" to any offense charged against me, and that if I should choose to plead "Not Guilty" the Constitution guarantees me (a) the right to a speedy and public trial by jury, (b) the right to see and hear all witnesses called to testify against me, (c) the right to use the power and process of the Court to compel the production of any evidence, including the attendance of any witnesses in my favor, and (d) the right to have the assistance of counsel for my defense at all stages of the proceedings.

The Commonwealth did not provide a "Plea of Guilty" form for the 1981 conviction. It did provide a copy of a form entitled "Commonwealth's Recommendation on a Plea of Guilty." This document mentions the charges against Raley, the facts of the case, and the Commonwealth's recommendation regarding the guilty plea. It is signed by both Raley and his attorney for the 1981 conviction, Thomas Clay.

The district court, on March 15, 1990, denied Raley's petition with the following words:

[T]he record plainly reflects that at the time of his guilty plea in late 1979,[3] Mr. Raley was fully advised of his constitutional rights, and signed a paper admitting that he had been so advised. His understanding of those rights cannot be assumed to have evaporated in a period of less than two years between that conviction and his 1981 conviction. Furthermore, the written record plainly shows that Mr. Raley was explicitly informed of the charges against him in 1981.

Raley filed a timely appeal on March 21, 1990. We issued a certificate of probable cause immediately, but delayed the hearing of the appeal after deciding that appoint-

ment of counsel would aid Raley's appeal. We issued an order of appointment on December 14, 1990, and specifically directed the parties to brief the issue of the constitutional validity of the 1981 plea in light of our decision in *Dunn v. Simmons,* 877 F.2d 1275 (6th Cir.1989), *cert. denied,* — U.S. ——, 110 S.Ct. 1539, 108 L.Ed.2d 778 (1990).

## II

### A

■ Raley contends that *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969) and *Dunn* require us to find that his plea was not entered knowingly and intelligently. Raley correctly notes that no transcript of either his 1980 or his 1981 plea proceedings exist, thereby placing the burden on the Commonwealth to prove that he knowingly and intelligently waived his rights to a jury trial, to confront his accusers, and to remain silent. *Boykin,* 395 U.S. at 243, 89 S.Ct. at 1712. He again correctly notes that in *Dunn* we established that a state may not carry its burden under *Boykin* by utilizing a presumption, and that any extrinsic evidence it offers must be clear and convincing. *Dunn,* 877 F.2d at 1277. He once again correctly notes that we specifically disapproved in *Dunn* of the burden-shifting procedure that the trial court used in this case. *Dunn,* 877 F.2d at 1278. We have subsequently enforced the clear and convincing requirement established in *Dunn. Lighthart v. Parke,* 919 F.2d 738 (6th Cir.1990).

Raley concludes from this that Kentucky did not produce enough evidence to establish clearly and convincingly his knowing and intelligent waiver of his rights. The fact of the silent record, combined with his testimony, creates a strong suggestion that he was not aware of his rights when he waived them. Raley criticizes Marshall's testimony by pointing out that Marshall could not independently recall ever representing him. He criticizes the importance of the "Plea of Guilty" form by pointing to

---

**3.** Raley signed the "Plea of Guilty" form in November 1979. However, the plea was not for-

mally accepted by the court until January 1980.

his testimony that he did not read the form before he signed it.

The Commonwealth makes two arguments in response. First, it argues that *Dunn* was wrongly decided. It contends that the procedure followed by the trial court is consistent with a large number of cases that allegedly hold that the burden is always on the petitioner to prove that a writ of habeas corpus should be issued. Second, within our framework established in *Dunn*, the Commonwealth argues that it has provided clear and convincing evidence that Raley's plea was knowing and intelligent. For the 1980 plea, it points to the signed "Plea of Guilty" form, which clearly enumerates the rights Raley waived. It also points to Marshall's testimony that he habitually reviewed this form with clients pleading guilty before they signed it. This testimony is supported by the certificate signed by Marshall. For the 1981 plea, it primarily relies on the district court's statement that Raley cannot be presumed to have forgotten his rights in the less than two years that intervened since his 1980 proceedings. The Commonwealth also relies on parts of Raley's testimony that suggest he pled guilty in 1981 because he thought he was getting a good deal. Finally, it emphasizes that Raley was correctly informed of the charges lodged against him.

### B

■ Our prior decision in *Dunn* governs the disposition of this case. In *Dunn*, we expressly declared that federal law, not state law, provides the appropriate standard for determining the constitutional validity of guilty pleas. *Dunn*, 877 F.2d at 1277, *citing Marshall v. Lonberger*, 459 U.S. 422, 431, 103 S.Ct. 843, 849, 74 L.Ed.2d 646 (1983). Kentucky's suggestion that *Dunn* was wrongly decided is legally incorrect. Almost all of the cases cited by Kentucky are irrelevant, dealing either with the burden of showing that a prior conviction should not be counted under the criminal history calculations of the Guidelines or with issues in habeas proceedings different

from that examined in *Boykin*. "In habeas challenges to the validity of a guilty plea, however, courts uniformly assign to the state [after petitioner shows noncompliance with the requirements of *Boykin*] the burden of showing that the plea was obtained constitutionally." *Fox v. Kelso*, 911 F.2d 563, 569 (11th Cir.1990) (collecting cases). Even if Kentucky's argument were correct, it would be beyond our power to overrule the specific holding of a prior panel. *Salmi v. Secretary of Health and Human Services*, 774 F.2d 685, 689 (6th Cir.1985). This court has already denied the Commonwealth's petition for a rehearing *en banc* to reconsider *Dunn*.

■ Our review of the evidence leads us to affirm the district court with respect to the 1980 plea, but reverse it with respect to the 1981 plea. We believe that the Commonwealth's proffer of the 1980 "Plea of Guilty" form conclusively establishes that Raley was advised of his rights prior to pleading guilty. The form includes a specific paragraph listing the rights Raley was waiving, and informing Raley that he need not plead guilty. This list includes three of the four rights Raley contends he was not advised of, including the right to a trial by jury, the right to confront witnesses, and the right to compel witnesses in his favor to testify. Raley does not deny that his signature is valid, and merely contends that he did not read the document before signing it. Were we to permit such self-interested allegations to override clear documentary evidence, a state could well find it impossible to meet its burden under *Dunn*.

We note that this court has previously found that a similar form satisfies the state's burden of proof. In *Brymer v. Dutton*, No. 89–6102, slip op. at 6 (6th Cir. June 27, 1991) [936 F.2d 572 (table)], a defendant making a *Boykin* challenge to a prior plea of guilty had signed a form stating that his attorney "has fully informed him of all of his rights and has explained them in detail," and that "a full explanation of his rights was made to him in open court." The guilty plea form here

is much more explicit, detailing the specific rights Raley waived.[4]

■ We reverse the district court, however, regarding the 1981 plea. The only relevant evidence offered by the Commonwealth on this point was that Raley had been advised of his rights less than two years earlier. The evidence regarding whether Raley thought he got a "good deal" with the 1981 plea was rightfully rejected as irrelevant by the trial court as the issue before us is not *why* Raley pled guilty; it is *what* Raley knew *when* he pled guilty. The evidence that Raley was correctly informed of the charges against him is also irrelevant, as it is Raley's knowledge of his rights, not the charges, that is called into question.

We do not believe that the relatively short period of time between Raley's two pleas permits us to infer that he was aware of his rights in 1981. This presumption, if consistently applied, would lead to a host of difficulties. Where would we draw the line within which a defendant is presumed to have remembered his rights? Two years? Ten? Would we be constitutionally required under the due process clause to hold a hearing to test the persistence of a defendant's memory so that an individualized determination could be made?[5] We do not want to step down such a path, and Kentucky has cited no case law that requires us to do so. Also, this principle requires us to treat persons with prior court experience differently than those for whom the current case is their first conviction. *Boykin* does not apply solely to the situation here and in *Dunn*, that of a repeat offender challenging a conviction of being a recidi-

vist. This rule would effectively deprive the recidivist of rights that a first-time offender possesses. The constitution does not permit us to parcel out different measures of rights. Absent the presumption of persisting memory, the district court's denial of the petition must be reversed.

## III

■ This brings us to the question of the remedy. The normal remedy when a petition is granted is to vacate the conviction and release the prisoner from custody, permitting the state to retry the defendant within constitutional guidelines. That, of course, is what Raley asks us to do. However, we believe that to vacate Raley's conviction unconditionally would do an injustice to Kentucky.

The primary record for this appeal is the trial court hearing. That hearing occurred in 1987, two years before we decided *Dunn v. Simmons*. Thus, the Commonwealth was not aware that it possessed the primary burden of persuasion, and that it had to prove Raley's knowledge by clear and convincing evidence. Had it known this, it is conceivable that it would have produced more evidence, such as producing either the judge who accepted the 1981 plea or Raley's 1981 attorney, Mr. Clay. The district court did not hold an evidentiary hearing below, and it is clear that Kentucky's main line of attack was to challenge the validity of *Dunn* rather than move for a new, federal hearing. Although Kentucky's Supreme Court has adhered to the procedure we disapproved of in *Dunn, see Conklin v. Commonwealth*, 799 S.W.2d

---

**4.** Although no challenge to the admissibility of the form was made by Raley, we hold this form to be admissible. It qualifies as an exception to the rule against hearsay under Rule 803(24) because it is "more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts," Rule 803(24)(B), Fed.R.Evid., and the interests of justice require us to consider the only contemporaneous documentary evidence of Raley's knowledge of his rights. Rule 803(24)(C), Fed.R.Evid. Assuming that Raley did not receive sufficient knowledge of the document's existence prior to the trial court hearing—although the lack of any surprise on Ra-

ley's part suggests this is not the case—Raley still was made aware of the document's existence more than two years before the district court requested a copy to supplement the trial court record. This fully satisfies the Rule's requirements.

Nor do we see any problem with authentication. The district court specifically stated that the copy of the form that it admitted was certified, making it a self-authenticating document under Rule 902(8), Fed.R.Evid.

**5.** *See* S. Dali, "The Persistence of Memory." *Cf.* M. Proust, *Remembrance of Things Past.*

582 (Ky.1990), we believe that the interests of justice require us to permit Kentucky a chance to produce additional evidence that it may not have produced at the trial court hearing because it thought such evidence unnecessary to meet its burden under its interpretation of *Boykin*.

We do not believe that we possess the authority to order Kentucky courts to hold a new hearing pursuant to our standards in *Dunn*. However, we certainly have the power to issue the writ of habeas corpus conditioned on the state not holding such a hearing. *See Gardner v. Pitchess*, 731 F.2d 637, 639 (9th Cir.1984) ("considerations of comity underlying the habeas writ … require that state courts be given an opportunity to correct alleged violations before federal courts step in"); *Hart v. Eyman*, 458 F.2d 334, 338–40 (9th Cir.), *cert. denied*, 407 U.S. 916, 92 S.Ct. 2441, 32 L.Ed.2d 691 (1972). *See also Hart v. Marion Correctional Institution*, 927 F.2d 256 (6th Cir.1991). That therefore is our course; the district court is directed to grant Raley's writ of habeas corpus if Kentucky does not within ninety days hold a new hearing under the procedure outlined in *Dunn v. Simmons* on Raley's contention regarding his 1981 conviction. *See Hart*, 927 F.2d at 259. Of course, if such habeas relief is granted, Kentucky is free to retry Raley for PFO II.

### IV

For the foregoing reasons, the judgment of the district court is AFFIRMED in part and REVERSED in part, and a conditional writ of habeas corpus is granted in conformity with this opinion.