STATE OF NEBRASKA, APPELLEE, V. JAMES L. BRANDON, ALSO
KNOWN AS JAMES DODDS, APPELLANT.

481 N.W.2d 207

Filed March 13, 1992.   No. S-90-783.

Frederick D. Franklin for appellant.

Don Stenberg, Attorney General, and Kimberly A. Klein for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

BOSLAUGH, J.

The defendant, James L. Brandon, also known as James Dodds, was found guilty by a jury of unlawful possession of crack cocaine with intent to deliver and was sentenced to 8 to 12 years' imprisonment, with credit given for time previously served. He has appealed and assigns as error the trial court's order permitting the State to endorse the name of an additional witness on the information on the day of trial, failure to grant his request for a continuance, refusal to give a jury instruction requested by him, and imposition of an excessive sentence.

The record shows that on February 24, 1990, Inspector Gerald Vajgert of the U.S. Postal Service was notified by the Express Mail office in Omaha, Nebraska, that there was a suspicious-looking package in its custody and that he was

requested to examine the parcel. Inspector Vajgert is the prohibited mailing specialist for the states of Nebraska and Iowa. His duties include investigating the use of mail service for anything that is illegal, including narcotics.

There are specific states from which a high volume of narcotic contraband originates for dispersion throughout the rest of the country. Those source states are Texas, Florida, Arizona, New Mexico, and California.

Inspector Vajgert went to the Express Mail office and examined the package and observed that it met the post office's criteria to warrant further investigation, in that the parcel originated from a source state, the label was handwritten, the label was addressed from one individual to another individual, the ZIP Code was incomplete, and the ZIP Code was different from that of the post office where the parcel was mailed.

The package was from a Brenda Dodds, 2734 Rainy River, Houston, Texas, with an incomplete ZIP Code of 7708. It was addressed to James Dodds, Jr., 3906 North 17th Street, Omaha, Nebraska, 68111.

Inspector Vajgert then contacted the Omaha Police Division's narcotics unit and arranged for a drug-detection dog to sniff the package. The dog "alerted" to the package, and subsequently a federal search warrant was prepared and executed on the parcel. Pursuant to the warrant, the parcel was opened in a systematic fashion, with step-by-step photographs being taken as the process ensued.

The outside cardboard envelope was opened, revealing a small box-shaped parcel wrapped in brown paper, with the same return address and delivery address that appeared on the Express Mail label. When the brown paper wrapping was removed from the inside box, a box of chocolate-covered peanut clusters was revealed. The cellophane on the outside of the box had already been torn, so Inspector Vajgert reopened the end of the box and emptied the contents onto the table. Contained within the box were a number of the peanut clusters and a small resealable plastic bag containing a tan rock-like substance which field tested positive for, and was subsequently confirmed to be, cocaine.

It was decided at that point to attempt a controlled delivery

of the package to its indicated destination. On the following day, February 25, 1990, the officers met again at Omaha police headquarters and proceeded to remove most of the suspected cocaine from the package and replace it with a look-alike substance. The officers wrapped the box again in the brown paper they had unsealed the previous day and then resealed it in the Express Mail envelope.

At approximately 1 p.m. on February 25, Inspector Vajgert approached the residence at 3906 North 17th Street. There was no response to his knock at the door, so he filled out a notification slip to let the parties at the residence know that there had been an attempt to deliver a parcel at that residence.

At approximately 8 p.m. that night, Inspector Vajgert was notified by Post Office personnel that a man had called inquiring about the parcel that the inspector had tried to deliver earlier that day. Pursuant to the inspector's instructions, the Post Office personnel had told the calling party that the package could not be delivered that day, but that the caller could either have it delivered or could pick it up the following day.

On the morning of February 26, 1990, Inspector Vajgert, dressed as a postal delivery person, returned to 3906 North 17th Street to deliver the parcel. He was being observed by members of the Omaha Police Division's undercover narcotics unit.

As the inspector got out of his car to deliver the parcel, a woman standing on the top step of the porch at 3906 North 17th Street asked if he had a parcel for her, and after ensuring that he was at the correct address, he had the female sign for the package. The signature was that of Victoria Robinson.

Robinson was seen leaving the front porch of the residence on 3906 North 17th Street and walking from that residence toward a vacant lot and then across the street to 3909 North 17th Street. Prior to her arriving at 3909 North 17th Street, the police officer tracking Robinson lost sight of her as she went behind a blue pickup truck. When Robinson reentered his view, the Express Mail envelope she had been carrying in her right hand was no longer visible.

After Robinson entered the residence at 3909 North 17th Street, the police officers went to the residence and spoke with a

woman at that house, who, after being advised as to why the officers were there, allowed them to search the residence. Robinson was ultimately found in an upstairs bedroom. The officers also found a "black zipper-like pouch bag" containing the brown paper wrapped package that had been inside the Express Mail envelope, and the Express Mail envelope was found, torn up, in a trash can in another bedroom of the residence.

Sometime prior to the controlled delivery at 3906 North 17th Street, Inspector Vajgert attempted another controlled delivery of a package to a Danny Livingston at 1608 Corby Street, Omaha, Nebraska. In the process of attempting this delivery, the inspector saw the name "J. Dodds" on the mailbox at the residence.

Subsequent to the search of the residence at 3909 North 17th Street, the defendant, Robinson, and Livingston were arrested and taken to police headquarters. A short time later, a consensual search of the residence of Livingston at 1608 Corby Street, Apartment 2, was performed. At the Corby Street residence, two torn up Express Mail envelopes were retrieved from the trash, one of which had the name "Dodds" on it.

On May 29, 1990, just before the trial commenced, the State, pursuant to Neb. Rev. Stat. § 29-1602 (Reissue 1989), asked leave of the court to endorse the name of Robinson on the information as a witness. The trial court allowed the endorsement over the objection of the defendant and overruled the defendant's motion for a continuance.

At the trial, Robinson testified that the defendant had asked her to sign for the Express Mail package for him and that he said he would "take care of" her after she received the package. The defendant told Robinson that he was afraid to sign for the package because he was concerned that the police were watching him. He thought it would look better for someone else to sign for the package. Robinson also stated that the defendant told her that he was going to sell the crack cocaine that was to be delivered in the Express Mail package.

Robinson was aware that the defendant had previously received Express Mail packages at his brother's residence at 1608 Corby Street, Apartment 2.

Robinson further testified that she signed for an Express Mail package on February 26, 1990, that was addressed to James Dodds at 3906 North 17th Street, which is where the defendant resided with his grandmother. After she signed for the package, Robinson went to a black van where the defendant was sitting with his girl friend and handed the package to him. The defendant looked at it and then gave it back to Robinson and told her to take it to her house and put it away where it could not be found.

When Robinson went from the van to her residence, she concealed the package in her jacket as instructed by the defendant. When she got inside the house, Robinson saw the defendant being arrested, and she became frightened, tore up the Express Mail envelope and threw it in the trash in her brother's room, and hid the brown paper-covered package in a black bag that she placed in the attic of her sister's closet.

Robinson admitted that a statement she had previously given to Sgt. William Agnew at Omaha police headquarters was incorrect in that she had denied knowing there was crack cocaine in the package because she was trying to protect herself and the defendant. She further testified that she had a felony conviction for second degree forgery and had been convicted on two counts of giving false information.

The defendant called Gregory Boswell to testify on his behalf. Boswell testified that he was in the black van with the defendant on the morning that the package was delivered and that Robinson mentioned to them that there was something that was supposed to be delivered to the defendant or that a slip had been left regarding this item the previous day. According to Boswell, Robinson said something about going to get the package and the defendant never asked Robinson to get it for him. When Robinson returned to the van, Boswell did not observe any package with her, nor did he hear the defendant ask Robinson to take anything back to her residence.

The defendant argues that his right to a fair trial was prejudiced by the trial court's allowing the endorsement of Robinson as a witness because without her testimony, there was no evidence to support a conviction on the charge against him. The defendant also argues that after the trial court granted the

State's request to endorse Robinson as a witness, the trial court should have granted his request for a continuance so that he could get a statement from Robinson, exploit contradictions in her testimony, and seek out character witnesses.

In *State v. Boppre*, 234 Neb. 922, 940-41, 453 N.W.2d 406, 422 (1990), this court stated:

Pursuant to Neb. Rev. Stat. § 29-1602 (Reissue 1989), a trial court may, in the exercise of its discretion, permit the names of additional witnesses to be endorsed upon the information after the information has been filed when doing so does not prejudice the defendant in the preparation of his defense. . . . The purpose of § 29-1602 is to notify the defendant as to witnesses who may testify against him and give him an opportunity to investigate them. . . . We have held that to obtain a reversal on the grounds of an additional endorsement of witnesses, the defendant must have requested a continuance at trial and must demonstrate prejudice.

On May 24, 1990, the State had moved to consolidate the trials of Robinson and the defendant. In the course of the discussion regarding this motion, the State informed the court that Robinson had made a statement to the police indicating that she signed for the package for the defendant at his request and that when she brought the package to him in the van, the defendant asked her to take it to her house. Robinson's attorney, who was also present at the hearing, informed the court that Robinson would testify, making a similar statement as to what happened and how she was involved with the defendant.

While the defendant was not formally notified that Robinson intended to testify against him until the day of his trial, he makes no claim of surprise as to the content of her testimony. Furthermore, because of Robinson's name being mentioned in the police reports and the statements made at the consolidation hearing 5 days prior to trial, the defendant is unable to show actual prejudice because of the late endorsement in this case. See *State v. Otey*, 205 Neb. 90, 287 N.W.2d 36 (1979).

As to the trial court's refusal to grant the defendant's request

for a continuance, that was a matter within the discretion of the trial court and will not be disturbed absent an abuse of discretion. *State v. Otey, supra.* Under the circumstances in this case, it was not an abuse of discretion to deny the defendant's request for a continuance.

The defendant argues that the trial court abused its discretion by not allowing him to depose Robinson; however, the record does not reflect any request or motion to allow him to take the deposition of Robinson. "An issue not properly presented and passed upon by the trial court may not be raised on appeal." *State v. Chapman*, 234 Neb. 369, 375, 451 N.W.2d 263, 268 (1990). See, also, *Mace v. Mace*, 215 Neb. 640, 341 N.W.2d 307 (1983). Moreover, the defendant makes no assignment of error regarding this matter, and this court does not consider errors which are argued but not assigned. See *State v. Beins*, 235 Neb. 648, 456 N.W.2d 759 (1990).

The defendant claims the trial court erred in failing to give a requested jury instruction, to wit: " 'The terms "Innocent" and "Not Guilty" are not synonymous, [and] you do not have to believe that James Brandon is innocent to return a verdict of Not Guilty.' " Although the trial court refused to give the defendant's requested instruction because it would be confusing to the jury, it permitted counsel for the defendant to argue that distinction to the jury.

The defendant did not object to the instructions given to the jury, and he does not argue that the instructions given do not correctly state the law. "If the jury instructions, when read together, correctly state the law, are not misleading, and adequately state the issues, there is no prejudicial error." *State v. Beins*, 235 Neb. at 654, 456 N.W.2d at 763.

The instructions given to the jury are not included in the record in this case, apparently because they were not requested by the defendant. Because the defendant has not presented us with a record which shows that the jury instructions given were misleading or otherwise inadequate statements of the law or the issues involved, we do not further consider his assignment of error pertaining to the trial court's failure to give his requested instruction. See *Stoco, Inc. v. Madison's, Inc.*, 235 Neb. 305, 454 N.W.2d 692 (1990).

Finally, the defendant contends that the trial court erred in imposing an excessive sentence. He was sentenced to not less than 8 nor more than 12 years' imprisonment, with credit for time previously served.

The defendant was convicted of unlawful possession with intent to deliver crack cocaine, a Class ID felony, which is punishable by a maximum term of imprisonment of 50 years, with a mandatory minimum of 3 years. See Neb. Rev. Stat. § 28-105(1) (Reissue 1989).

A sentence imposed within the statutory limits will not be set aside as excessive absent an abuse of discretion by the trial court. *State v. Boppre*, 234 Neb. 922, 453 N.W.2d 406 (1990).

At the time of the crime, the defendant was 28 years old and single. He has never held any meaningful employment.

The defendant's criminal record includes convictions for arson and aggravated robbery. The aggravated robbery conviction was in Houston, Texas. The trial court noted that the drugs involved in this case were being delivered to Omaha from that city.

Given the defendant's prior record, and the seriousness of the case at bar, the sentence imposed by the district court was not an abuse of discretion.

The judgment is affirmed.

AFFIRMED.