STATE OF NEBRASKA, APPELLEE, V. RICHARD S. TEJRAL,
APPELLANT.
482 N.W.2d 6

Filed March 27, 1992.    No. S-90-1091.

Robert Wm. Chapin, Jr., for appellant.

Norman Langemach, Jr., Lincoln City Prosecutor, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

CAPORALE, J.

Following a county court bench trial, the defendant-appellant, Richard S. Tejral, was convicted of third-offense driving while under the influence of alcohol, in violation of Neb. Rev. Stat. § 39-669.07 (Reissue 1988). He was thereafter jailed for 120 days, was fined $500, and had his

license to operate a motor vehicle suspended for a period of 15 years. The district court affirmed. Tejral now asserts, in summary, that the district court erred in failing to find the county court erred on the record by (1) failing to sustain his motion to suppress certain evidence, (2) admitting certain exhibits into evidence, (3) finding the evidence sufficient to support the charge, and (4) imposing an excessive sentence. We affirm.

At approximately 6:58 p.m. on January 5, 1990, Lincoln police officer John D. Rallis saw the 48-year-old Tejral driving a truck at 10 miles per hour and then quickly accelerating. Rallis paced Tejral for approximately six blocks, during which time the truck swerved several times and came close to hitting the curb. Although Rallis did not use speed radar, he clocked Tejral by following him at a consistent speed. Tejral reached speeds of up to 48 miles per hour in a 40-mile-per-hour zone. After several blocks, Rallis activated his cruiser lights and a block or two later activated the siren. Tejral finally stopped.

Rallis reported that as Tejral exited his vehicle, "he lost his balance and had to grab the vehicle to support himself." Tejral was unable to produce a driver's license, but apparently had a car registration. Rallis noted that Tejral's breath emitted a strong alcoholic odor, that he swayed and was unsteady on his feet, that his eyes were bloodshot, and that his speech was "very slow and deliberate and run together." Tejral first claimed he had not had anything to drink. However, when Rallis commented that Tejral smelled of alcohol, Tejral replied that he had had one drink. In later testimony, Tejral testified that he had had two beers around 5 p.m. Concluding that Tejral was intoxicated, Rallis took him for testing.

At the testing center, Tejral was unsteady when walking across the room. He was unable to walk in a straight line, count his steps, or turn around. He could not stop swaying when asked to close his eyes. Nor could he recite the alphabet.

Officer Katherine F. Heskett tested Tejral's breath alcohol level. After testifying to her training and the testing procedure followed, she reported that at 7:31 p.m., Tejral had a reading of .144 grams of alcohol per 210 liters of breath. Like Rallis, Heskett testified that Tejral had a strong odor of alcohol on his

breath, bloodshot and watery eyes, slurred speech, and a staggered walk. It was her opinion that Tejral was under the influence of alcohol.

Tejral filed a motion to suppress certain evidence, claiming that there existed no probable cause either to arrest him or to test his breath for alcohol. At the hearing, Tejral asserted he "would like to proceed with the motion to suppress evidence which is based on basically whether there was any probable cause for the stop to begin with." In accordance with this characterization of the issue, Rallis testified that Tejral was stopped because he was speeding and driving erratically. At the conclusion of the hearing, Tejral argued that the motion should be sustained because although the State's evidence showed probable cause to stop him for speeding, it did not show probable cause to arrest him for driving while under the influence of alcohol. The county court denied the motion.

At trial, Tejral testified that he had suffered a broken collarbone and rib a few months earlier and was in pain as the result of hauling firewood before he was arrested; he claimed it was this pain that caused him to walk abnormally and appear unsteady. Tejral denied that he crossed the centerline or hit a curb. He first admitted but later denied that he was speeding. Tejral made no objections to the admission of the evidence he had earlier sought to suppress, and that evidence was received as part of the trial evidence.

Thus, the first summarized assignment of error, claiming the county court should have sustained Tejral's motion to suppress, fails. One wishing to preserve a claim of error in the overruling of a motion to suppress must at trial make a specific objection to the offer of the evidence which was the subject of the suppression motion. *State v. Tingle*, 239 Neb. 558, 477 N.W.2d 544 (1991); *State v. Mahlin*, 236 Neb. 818, 464 N.W.2d 312 (1991).

We therefore need not explore whether Tejral narrowed his suppression motion by stating at the beginning of the hearing that the issue was whether probable cause existed to stop him in the first instance.

The second summarized assignment of error claims the county court erroneously received four exhibits into evidence,

two at trial and two at the enhancement hearing.

At trial, the county court, over a general objection claiming that foundation for their admission was lacking, received a checklist Heskett had used in the course of operating the breath testing machine and received the test result printed by the machine. However, the objections to these exhibits came long after there had been unchallenged testimony both as to the operation of the machine and the result it produced. At the time Tejral made his objection, the challenged exhibits were merely cumulative. Even if the admission of these exhibits was erroneous, a matter we do not decide, the error at that point was harmless beyond a reasonable doubt. See *State v. Melton*, 239 Neb. 790, 478 N.W.2d 341 (1992) (erroneously admitted cumulative evidence harmless if other relevant evidence supports finding).

Tejral next contends that two records of prior driving while intoxicated convictions were erroneously admitted for the purpose of enhancing this incident to a third offense. The records concern a 1983 and a 1985 conviction.

Challenges to prior plea-based convictions for enhancement proceedings may only be made for the failure of the record to disclose whether the defendant had or waived counsel at the time the pleas were entered. *State v. Crane, ante* p. 32, 480 N.W.2d 401 (1992). In other words, "to prove a prior conviction for enhancement purposes, the State need only show that at the time of the prior conviction the defendant had, or waived, counsel." *State v. Oliver*, 230 Neb. 864, 869, 434 N.W.2d 293, 297 (1989). However, a defendant cannot in an enhancement proceeding collaterally attack a prior conviction for lack of any indication of a voluntary and intelligent waiver of other rights. *State v. Crane, supra.* Hence, at an enhancement proceeding the focus is on whether a defendant was represented by counsel or waived the right to be so represented, not whether the defendant effectively waived all of his or her other rights.

Tejral claims foundation for admission of the 1983 conviction is lacking because the sentencing court's stamp on the operative waiver of rights form is undated, the form does not bear a case number, and the year is not shown on the

dateline above Tejral's signature. However, the questioned form is part of a record certified by the clerk of the sentencing court to be accurate. The certificate does bear a case number and ties the questioned form to a driving incident taking place on August 5, 1983, which is the subject of a complaint charging that Tejral was then driving while under the influence of alcohol. The questioned form itself bears the signature of the same attorney who is shown by other documents in the certified record as having represented Tejral throughout the proceeding. In addition, although the year is not shown on the dateline of the questioned form, the day and month reflected thereon conform with the dates on other documents in the record. Under these circumstances, the foundation was adequate, notwithstanding the sentencing court's sloppiness. Thus, the county court properly received the record of the 1983 conviction in evidence.

The record of the 1985 conviction clearly establishes that Tejral was represented by counsel; thus, his general objection to its introduction was likewise properly overruled.

Tejral next asserts that the county court erred in finding the evidence sufficient to support the charge. He bases his contention on the fact that the alcohol content of his breath was measured 30 minutes after he was first stopped and that there is no evidence to show what the reading may have been when he was stopped.

This position was resolved against him in *State v. Kubik*, 235 Neb. 612, 456 N.W.2d 487 (1990). The defendant therein was arrested at 3:50 a.m., but was not tested until 4:33 a.m. He complained that the State had failed to show a proper nexus between his breath alcohol level at the time it was measured and its level at the time of his arrest. In concluding that the 43 minutes intervening between the arrest and the test did not destroy the admissibility of the test results, we, after an exhaustive review of cases across the country, concluded:

> [M]atters of delay between driving and testing are properly viewed as going to the weight of the breath test results, rather than to the admissibility of the evidence. A valid breath test given within a reasonable time after the accused was stopped is probative of a violation of § 39-669.07. [Citations omitted.] In some cases, the delay

may be so substantial as to render the test results nonprobative of the accused's impairment or breath alcohol level while driving. In this case, however, the breath test was given less than 1 hour after the defendant was stopped. The evidence was relevant, and the trial court did not err in admitting the Intoxilyzer test result.
*Kubik*, 235 Neb. at 634, 456 N.W.2d at 501. See, also, *State v. Towler, ante* p. 103, 481 N.W.2d 151 (1992).

In the last assignment of error, in what can only be characterized as a denial of reality, Tejral claims that the sentence is excessive. The steadfast rule in this state is that a sentence imposed within the statutory limits will not be disturbed on appeal in the absence of an abuse of discretion by the trial court. *State v. Schumacher, ante* p. 184, 480 N.W.2d 716 (1992); *State v. Brandon, ante* p. 232, 481 N.W.2d 207 (1992).

Third-offense driving while intoxicated is a Class W misdemeanor, which subjects the offender to imprisonment for a period of from 3 to 6 months and a $500 fine. Neb. Rev. Stat. § 28-106 (Reissue 1989). In addition, the offender's license to operate a motor vehicle is to be suspended for a period of 15 years. § 39-669.07.

The sentence obviously is within the statutorily prescribed limits, and the record shows that Tejral has had more than three convictions for driving while intoxicated. The sentence does not in any sense constitute an abuse of discretion by being excessive.

AFFIRMED.

WHITE, J., concurring in part, and in part dissenting.

I agree that the evidence amply supports the conviction of the substantial offense, but for the reason last stated in *State v. Crane, ante* p. 32, 480 N.W.2d 401 (1992) (White, J., dissenting), I dissent from the portion of the opinion which sustains the enhancement proceeding.

SHANAHAN, J., dissenting.

*Tejral* is another in the growing parade of this court's decisions that a defendant faced with enhancement of penalty due to a prior plea-based conviction cannot inquire into the prior conviction to determine whether the defendant was

informed and, therefore, intelligently and voluntarily waived the constitutional rights to a trial by jury and to confront accusers and the privilege against compulsory self-incrimination, information which is essential to a defendant's valid entry of a guilty plea in accordance with due process. See, *Boykin v. Alabama*, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969); *State v. White*, 238 Neb. 840, 472 N.W.2d 720 (1991); *State v. Irish*, 223 Neb. 814, 394 N.W.2d 879 (1986).

Reflected in *Tejral* is this court's relentless reversion to a pre-*Boykin-Irish* presumption that a defendant represented by counsel at the time of a prior plea-based conviction has voluntarily and intelligently waived the constitutional rights mentioned in *Boykin* and *Irish*. As evidenced by *Tejral*, "Nebraska procedure lacks a method to judicially process a *Boykin* or *Irish* claim as an inquiry into the constitutional validity of a prior plea-based conviction used for enhancement of penalty and, hence, fails due process." *State v. Crane, ante* p. 32, 43, 480 N.W.2d 401, 407-08 (1992) (Shanahan, J., dissenting). See, also, *State v. Johns*, 233 Neb. 477, 445 N.W.2d 914 (1989) (Shanahan, J., dissenting); *State v. Oliver*, 230 Neb. 864, 434 N.W.2d 293 (1989) (Shanahan, J., dissenting).

There may be, however, eventual resolution to the deficiency of due process in Nebraska's procedure or, more appropriately, lack of procedure pertaining to a constitutional inquiry into a prior plea-based conviction used for enhancement purposes. On March 2, 1992, the U.S. Supreme Court granted certiorari in *Raley v. Parke*, 945 F.2d 137 (6th Cir. 1991), *cert. granted* 60 U.S.L.W. 3593 (U.S. Mar. 2, 1992) (No. 91-719), apparently on the question whether due process under the Fourteenth Amendment requires a state to prove compliance with *Boykin* for constitutional validity of a prior plea-based conviction used for enhancement, when the record for the prior conviction shows that the defendant was represented by counsel, but is silent concerning the colloquy required by *Boykin* for a constitutionally valid plea of guilty.

Thus, the Nebraska decisional parade continues along a route on which the U.S. Supreme Court will love the Nebraska parade, or rain on it. Time will tell. Meanwhile, I dissent to

*Tejral* as a part of the swelling parade in the denial of due process through use of a prior and unconstitutional plea-based conviction for enhancement of penalty.