*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PATRICIA DUNCAN,

Plaintiff-Appellee,

v

CITY OF DETROIT,

Defendant-Appellant.

UNPUBLISHED
December 09, 2024
3:11 PM

No. 366429; 366656
Wayne Circuit Court
LC No. 21-004694-CD

Before: YOUNG, P.J., and M. J. KELLY and FEENEY, JJ.

PER CURIAM.

In Docket No. 366429, defendant, the City of Detroit, appeals as of right the trial court's order denying its motion for summary disposition under MCR 2.116(C)(7) (governmental immunity) to dismiss plaintiff Patricia Duncan's claim of intentional infliction of emotional distress. In Docket No. 366656, defendant appeals by leave granted the trial court's order denying its motion for summary disposition under MCR 2.116(C)(7) and (10) (genuine issue of material fact) to dismiss plaintiff's claim pursuant to the Whistleblower Protection Act ("WPA"), MCL 15.361 *et seq.*[1] In Docket No. 366429, we reverse the trial court's order because plaintiff does not allege an exception to governmental immunity and fails to raise any factual question as to whether the conduct alleged fell outside of a governmental function. In Docket No. 366656, we affirm the trial court's denial of summary disposition and hold that, when viewing the evidence in the light most favorable to plaintiff, she has presented material questions of fact.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff's lawsuit arose from alleged unfair treatment after she referred for investigation a citizen's complaint against the commander of her police precinct. At the time the events that gave rise to this case occurred, plaintiff was a Master Sergeant in the Detroit Police Department ("DPD") assigned to the seventh precinct, and Nicholas Giaquinto was the Commander of the

---

[1] *Duncan v Detroit*, unpublished order of the Court of Appeals, entered September 20, 2023 (Docket No. 366656). This order also consolidated the two appeals.

seventh precinct. Plaintiff took a citizen's complaint from Kenneth Taylor, who believed that Giaquinto illegally seized and impounded Taylor's vehicle. Giaquinto suspected that Taylor had been a witness to a drive-by shooting and effectuated a traffic stop, and ultimately impounded Taylor's vehicle. Plaintiff claimed that when she contacted Giaquinto to inquire whether Taylor's vehicle was ready for Taylor to retrieve, Giaquinto sounded panicked and asked her not to submit the complaint to the Office of Chief Investigator ("OCI"). Giaquinto denied that he illegally seized and impounded Taylor's vehicle and denied that he asked plaintiff not to process Taylor's complaint. Plaintiff and other officers testified that it was the duty of every officer receiving a citizen's complaint to record the complaint and submit it to the OCI. Plaintiff claimed that after she submitted Taylor's complaint, Giaquinto instigated several written reprimands and investigations against plaintiff, which ultimately led to plaintiff's temporary assignment out of the seventh precinct to a less desirable location in Management Services. Plaintiff alleged that this reassignment led to health issues and loss of overtime at the seventh precinct.

Plaintiff filed a complaint alleging violations of the WPA and a claim of intentional infliction of emotional distress. Defendant moved for summary disposition, arguing that plaintiff failed to plead in avoidance of governmental immunity. Defendant also argued that plaintiff failed to establish a prima facie case of a violation of the WPA and failed to demonstrate that defendant's legitimate business reason for its actions was pretext. The trial court disagreed and denied defendant's motions for summary disposition. This appeal followed.

## II. STANDARDS OF REVIEW

We review de novo a trial court's decision on a motion for summary disposition. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). "MCR 2.116(C)(7) provides that a motion for summary disposition may be raised on the ground that a claim is barred because of immunity granted by law." *Dextrom v Wexford Co*, 287 Mich App 406, 428; 789 NW2d 211 (2010). This Court must "accept all well-pleaded factual allegations as true and construe them in favor of the plaintiff, unless other evidence contradicts them." *Id*. This Court must also consider "any affidavits, depositions, admissions, or other documentary evidence" submitted in support of a (C)(7) motion. In response, the party opposing may, but need not, supply admissible supporting evidence. *Maiden v Rozwood*, 461 Mich 109, 121; 597 NW2d 817 (1999). If, after reviewing the record, "no facts are in dispute, and if reasonable minds could not differ regarding the legal effect of those facts," then the trial court, and thus this Court, in reviewing de novo, may decide the case as a matter of law. *Dextrom*, 287 Mich App at 429. Of course, if a question of fact exists after such a review, summary disposition is inappropriate. *Id*.

MCR 2.116(C)(10) provides that summary disposition is appropriate if, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." The moving party "must specifically identify the issues as to which the moving party believes there is no genuine issue as to any material fact" and support its motion with documentary evidence. *Maiden*, 461 Mich at 120, citing MCR 2.116(G)(4). A court reviewing a motion under MCR 2.116(C)(10) must consider the substantively admissible evidence offered in opposition to the motion. *Maiden*, 461 Mich at 121. To survive summary disposition, the opposing party must set forth specific facts establishing a genuine issue of material fact for trial. *Id*. at 120. A genuine issue of material fact exists when the evidence presented "leave[s] open an issue upon which reasonable minds might differ."

*Debano-Griffin v Lake Co*, 493 Mich 167, 175; 828 NW2d 634 (2013) (quotation marks and citation omitted).

We also de novo questions of statutory interpretation and the applicability of governmental immunity. *Rowland v Washtenaw Co Rd Comm*, 477 Mich 197, 202; 731 NW2d 41 (2007); *Wood v City of Detroit*, 323 Mich App 416, 419; 917 NW2d 709 (2018). When construing a statute, our primary goal is to give effect to the intent of the Legislature. *Rowland*, 477 Mich at 202. We begin by construing the language of the statute itself. *Id*. When the language is unambiguous, we give the words their plain meaning and apply the statute as written. *Id*.

## III. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Defendant argues that plaintiff failed to properly plead her claim of intentional infliction of emotional distress in avoidance of governmental immunity. We agree.

The governmental tort liability act (GTLA), MCL 691.1401 *et seq*., provides governmental entities with immunity from tort liability, subject to extremely limited and strictly construed exceptions. *Genesee Co Drain Comm'r v Genesee Co*, 309 Mich App 317, 326; 869 NW2d 635 (2015). Under MCL 691.1407(1), governmental agencies are immune from tort liability "if the governmental agency is engaged in the exercise or discharge of a governmental function." The DPD, an agency of defendant, constitutes a governmental agency for purposes of the GTLA. *Mack v Detroit*, 467 Mich 186, 204; 649 NW2d 47 (2002).

"A plaintiff filing suit against a governmental agency must initially plead his claims in avoidance of governmental immunity." *Odom v Wayne Co*, 482 Mich 459, 478-479; 760 NW2d 217 (2008). In other words, a plaintiff "must either (1) plead a tort that falls within one of the GTLA's stated exceptions, or (2) demonstrate that the alleged tort occurred outside the exercise or discharge of a governmental function." *Genesee Co Drain Comm'r*, 309 Mich App at 327. The statutory exceptions to governmental immunity are the highway exception, MCL 691.1402; the motor-vehicle exception, MCL 691.1405; the public-building exception, MCL 691.1406; the proprietary exception, MCL 691.1413; the governmental-hospital exception, MCL 691.1407(4); and the sewage-disposal-system-event exception, MCL 691.1417(2) and (3). *Odom*, 482 Mich at 478 n 62. Plaintiff does not invoke any of the statutorily enumerated exceptions to governmental immunity.

Plaintiff does not expressly claim either that the Detroit Police Department employees were acting outside of their government function. Plaintiff does state in her Complaint that

> 38. Defendant's conduct toward [Plaintiff] was so extreme and outrageous in degree as to go beyond all possible bounds of decency and to be regraded as atrocious and utterly intolerable in a civilized society.

It seems then, that plaintiff has adopted the same theory employed by the plaintiffs in *Genesee Co Drain Comm'r*. There, we summarized the plaintiffs' theory as "if a governmental agency commits an intentional tort, it cannot, by definition, be engaged in the exercise or discharge of a governmental function, as intentional torts ought not be regarded as a government function." *Genesee Co Drain Comm'r*, 309 Mich App at 330. We rejected that argument and we must reject

it once again. Here, as with *Genesee Co Drain Comm'r*, "the alleged intentional torts committed by defendants were specific acts or decisions that occurred as part of the 'general activity' of [their] government function." *Genesee Co Drain Comm'r*, 309 Mich at 330. "It is well established in Michigan that the management, operation, and control of a police department is a governmental function." *Mack*, 467 Mich at 204. Captain Conway Petty, Lieutenant Jamie McCrae, and Giaquinto testified that it was common practice to reassign an officer who was under investigation to another unit within the police department while the investigation was pending. Therefore, plaintiff's reassignment fell within the management of the DPD as a governmental function. Because plaintiff did not present any evidence or argument to contradict this testimony, she failed to establish that her reassignment occurred outside the exercise or discharge of a governmental function. *Genesee Co Drain Comm'r*, 309 Mich at 328. Before her reassignment, plaintiff received progressive forms of intervention, including multiple Negative Administrative Counseling Registers (ACRs) and one three-day suspension. Plaintiff does not argue that these were unwarranted, or done outside the scope of a lieutenant's responsibilities; plaintiff only argues that there are similarly situated individuals who did not face the same scrutiny for doing the same actions. While this may create a question of material fact as to plaintiff's WPA claim, it does not overcome governmental immunity.

In addition, even if we were to view particular actions taken by lieutenants or the commander as done outside the course of employment and in bad faith, that would render those *individuals* potentially liable, not the City of Detroit. *Alexander v Riccinto*, 192 Mich App 65, 70-73; 482 NW2d 6 (1991).

Thus, the trial court erred by denying defendant's motion for summary disposition as to plaintiff's claim of intentional infliction of emotional distress. We reverse the trial court's order denying defendant's motion for summary disposition as to plaintiff's intentional infliction of emotional distress claim.

## IV. WPA

Defendant argues that the trial court erred by denying its motion for summary disposition because plaintiff failed to establish a prima facie case of a violation of the WPA. We disagree and instead affirm the trial court's order.

As with any case involving statutory interpretation, we begin with the plain language of the statute. *PNC Nat'l Bank Ass'n v Dep't of Treasury*, 285 Mich App 504, 506; 778 NW2d 282 (2009), quoting *Wickens v Oakwood Healthcare Sys*, 465 Mich 53, 60; 631 NW2d 686 (2001) ("If the statute's language is clear and unambiguous, we assume that the Legislature intended its plain meaning, and we enforce the statute as written.") MCL 15.362 of the WPA states:

> An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because the employee, or a person acting on behalf of the employee, reports or is about to report, verbally or in writing, a violation or a suspected violation of a law or regulation or rule promulgated pursuant to law of this state, a political subdivision of this state, or the United States to a public body, unless the employee knows that the report is false, or because an employee is

requested by a public body to participate in an investigation, hearing, or inquiry held by that public body, or a court action.

The plain language indicates the WPA was intended to benefit employees engaged in "protected activity," meaning employees "who report or are about to report violations of a law, regulation, or rule to a public body." *Chandler v Dowell Schlumberger, Inc*, 456 Mich 395, 406; 572 NW2d 210 (1998).

If a plaintiff, as here, does not have direct evidence to support their WPA claims, Michigan courts analyze the claims under a burden-shifting framework. *Roulston v Tendercare (Mich), Inc*, 239 Mich App 270, 280-281; 608 NW2d 525 (2000). First, the plaintiff must establish a prima facie case of retaliatory conduct under MCL 15.362 by presenting evidence that "(1) the plaintiff was engaged in protected activity as defined by the act, (2) the plaintiff was discharged or discriminated against, and (3) a causal connection exists between the protected activity and the discharge or adverse employment action." *Pace v Edel-Harrelson*, 499 Mich 1, 6; 878 NW2d 784 (2016). If the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate business reason for the discharge. *Roulston*, 239 Mich App at 281. If the defendant succeeds, the plaintiff must prove that the defendant's proffered reason was only a pretext for discharge. *Id*.

## A. PLAINTIFF WAS ENGAGED IN PROTECTED ACTIVITY

Plaintiff was engaged in protected activity when she recorded Taylor's complaint and submitted it to the OCI, contrary to Giaquinto's demand that plaintiff not process the complaint. Plaintiff stated that it was her duty to process every citizen's complaint, which Petty, McCrae, and Lieutenant Shelly Holderbaum confirmed. As a result, defendant argues that plaintiff was not engaged in protected activity because she merely recorded Taylor's statement on a standard form and entered it into the system as part of her normal and required job duties. This argument fails, though, because our Supreme Court has held that the plain language of MCL 15.362 does not contain any "limiting language that requires the employee to be acting outside the regular scope of his employment," and "renders irrelevant whether the reporting is part of the employee's assigned or regular job duties." *Brown v Mayor of Detroit*, 478 Mich 589, 596; 734 NW2d 514 (2007). Viewing the evidence in a light most favorable to plaintiff, plaintiff engaged in protected activity when, contrary to Giaquinto's demand, she reported a suspected violation of a law by Giaquinto to the OCI, a public body. *Brown*, 478 Mich at 594, 596; MCL 15.362.

## B. PLAINTIFF RAISED A FACTUAL QUESTION AS TO WHETHER SHE WAS DISCRIMINATED AGAINST

Next, plaintiff had to establish that defendant discharged, threatened, or otherwise discriminated against her regarding her compensation, terms, conditions, location, or privileges of employment. *Wurtz v Beecher Metro Dist*, 495 Mich 242, 251; 848 NW2d 121 (2014). MCL 15.363(1) governs the period of limitations for actions pursuant to the WPA and states that "[a] person who alleges a violation of this act may bring a civil action for appropriate injunctive relief, or actual damages, or both within 90 days after the occurrence of the alleged violation of this act." Plaintiff claimed three separate incidents of retaliatory action occurred within 90 days of the filing of her complaint. Plaintiff was required to file her complaint within 90 days of the

retaliatory actions. Plaintiff filed her complaint on April 13, 2021. Therefore, plaintiff may rely on any retaliatory actions as provided by MCL 15.362 that occurred on or after January 13, 2021.

Considering the express language of MCL 15.362, plaintiff must demonstrate that she was subject to discharge, threats, or otherwise discriminated against regarding her compensation, terms, conditions, location, or privileges of employment in order to establish an adverse employment action under the WPA. *Wurtz*, 495 Mich at 126 n 14. Plaintiff's reassignment was a change of location. The refusal to allow plaintiff to work available overtime in the seventh precinct during her reassignment constituted a loss of compensation. Therefore, plaintiff established an adverse employment action as to the reassignment and loss of overtime. However, plaintiff failed to demonstrate that Holderbaum's investigation and subsequent recommendation subjected plaintiff to any of the adverse employment actions enumerated in MCL 15.362. Plaintiff asserted that the recommendation threatened her with punishment, but plaintiff failed to submit any evidence of punishment. The recommendation itself only stated that the investigation should be forwarded for adjudication, which did not occur due to the request it be reassigned. Accordingly, plaintiff only demonstrated that she was subject to change in work location and loss of overtime compensation.

## C. PLAINTIFF RAISED A FACTUAL QUESTION AS TO WHETHER THERE WAS A CAUSAL CONNECTION BETWEEN HER PROTECTED ACTIVITY AND THE ADVERSE EMPLOYMENT ACTION

Plaintiff was next required to establish a causal connection between her protected activity and the adverse employment action by demonstrating that defendant took the adverse employment action because of her protected activity. *Whitman v Burton*, 493 Mich 303, 320; 831 NW2d 223 (2013). "A temporal relationship, standing alone, does not demonstrate a causal connection between the protected activity and any adverse employment action." *Debano-Griffin*, 493 Mich at 177 (quotation marks and citation omitted). At this point, it is helpful to revisit the plain language of the WPA. MCL 15.363(1) (emphasis added) states that "[a] person who alleges a violation of this act may bring *a civil action for appropriate injunctive relief, or actual damages, or both within 90 days* after the occurrence of the alleged violation of this act." This section outlines essentially a statue of limitations for the WPA. The proofs for the causation element are not temporally limited in the same way. To prove a link between her taking of Taylor's citizen's complaint in June 2020 and the adverse employment actions in January and February 2021, the court is permitted to review *all* of the documentary evidence, even that which falls outside the 90-day statute of limitations. Viewing this evidence in a light most favorable to plaintiff, we hold she has established a genuine issue of material fact that the investigation was initiated in retaliation for her submission of Taylor's complaint.

First, we address the triggering incident—the filing of the citizen's complaint. According to plaintiff, Giaquinto asked her not to file the citizen's complaint, despite both Giaquinto and plaintiff testifying that it was protocol to make such a filing. In her complaint, plaintiff enumerates what she alleges is "a pattern of retaliatory action against her," seven incidents involving progressive discipline, from an ACR, to an attempted demotion of rank, to a multiple-day suspension. Plaintiff's deposition adds further context to these allegations.

In her deposition, at least one, if not two, of the highlighted examples of retaliatory action occurred before the protected event—filing the citizen's complaint against Giaquinto. We do not consider these in deciding whether a question of material fact has been presented as to causation. We can consider, however, general changes in behavior and treatment from before the triggering incident and after. Before she filed a citizen's complaint against Giaquinto, there was at least one situation where Giaquinto emailed plaintiff directly to get additional information on a discretionary decision. That type of contact and follow up seemingly stopped after the citizen's complaint was filed. And, we consider any actions that came after the triggering event. For example, shortly after the filing of the citizen's complaint, according to plaintiff's testimony, Giaquinto contacted plaintiff's lieutenant and asked for her service rating to be lowered. The cited reason for the rank decrease was counseling received in August 2020, which is a progressive discipline received after the filing of the citizen's complaint. Plaintiff also testified regarding at least one investigation done into her conduct after the filing of the citizen's complaint. She testified that investigations were done at the direction of Giaquinto. Meanwhile, other officers of equal or greater rank were seemingly not investigated for punishable conduct, including failing to report an international incident to the Department of Homeland Security and the use of racial slurs between DPD staff members.

Both Giaquinto and Holderbaum testified that Holderbaum initiated the investigation into plaintiff's alleged insubordinate behavior that led to plaintiff's reassignment to Management Services. According to DPD policy, Holderbaum was required to seek authorization from Giaquinto for time to conduct an investigation, which Giaquinto approved. Holderbaum explained the situation between her and plaintiff led Holderbaum to believe that plaintiff was insubordinate. Holderbaum e-mailed Giaquinto and Petty the same day as the incident informing them of the circumstances and inquiring who they thought should complete the investigation.

Plaintiff points to Holderbaum's investigation report in which Holderbaum stated that she "was advised to complete this Investigation and Report by Commander Nicholas Giaquinto . . . ." It is also clear from that same report that Giaquinto was kept abreast of this investigation and he granted extensions to complete the same. Giaquinto testified that Holderbaum approached him to explain the events and ask for an investigation. Holderbaum testified that she asked Giaquinto who should conduct the investigation and he told her that she could conduct the investigation. This decision alone is important because Holderbaum herself was an aggrieved party. As plaintiff observed during the course of her questioning, " I do not think Lieutenant Holderbaum should be conducting this investigation since she . . . is an allegedly aggrieved participant." In fact, this same investigation was returned for resubmission by a "non-involved supervisor" because the original investigation "could be perceived as biased." From the record below, it is not clear what, if any, findings and discipline resulted from a new investigation or if one was even conducted.

One of the lieutenants testified that it was customary for an officer or a supervisor to get assigned out if they were under investigation, and that, if the reason for an investigation led to a hostile work environment, the lower-ranking officer was typically the person who was assigned to another department. Plaintiff did not present any evidence to support that Giaquinto ordered her reassignment or prohibited her from working overtime in the seventh precinct. But presumably, Giaquinto knew, or should have known, that the result of an investigation is displacement. And there is at least a question of fact as to whether Giaquinto ordered an investigation, by a biased party, because of plaintiff's protected conduct. This must be taken together with the starkly

different approaches to similarly situated officers who erred with respect to conduct while on the job.  See, for example *Shaw v Ecorse*, 283 Mich App 1, 16; 770 NW2d 31 (2009) (finding a question of fact existed where a plaintiff presented evidence of a temporal connection between protected activity and adverse employment action as well as evidence that the actions taken against him were "unusual.").  And while we review this record de novo, questions of weight and credibility are squarely reserved for the trier of fact.  *Henry v City of Detroit*, 234 Mich App 405, 415; 594 NW2d 107 (1999).  As a result, the trial court did not err when it rejected defendant's motion for summary disposition regarding the WPA claim.

## V.  CONCLUSION

Reversed in part and affirmed in part.  We remand to the trial court for further proceedings as to plaintiff's WPA claim only, and to summarily dismiss plaintiff's claim of intentional infliction of emotional distress.  We do not retain jurisdiction.

/s/ Adrienne N. Young
/s/ Michael J. Kelly
/s/ Kathleen A. Feeney