9 F.3d 110
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Edward HANSERD, Defendant-Appellant.
 No. 91-1577.
 United States Court of Appeals, Sixth Circuit.
 Oct. 21, 1993.
 
 Before MILBURN and GUY, Circuit Judges; and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant, Edward Hanserd, contends that the district court should have allowed him to withdraw his plea of guilty to federal drug and weapons charges. In the alternative, Hanserd argues that the guilty plea should be set aside because the district court did not comply with Rule 11 of the Federal Rules of Criminal Procedure. Additionally, he claims that he was denied effective assistance of counsel when he was advised to plead guilty. Finally, he takes issue with the district court's calculation of his offense level under the federal sentencing guidelines. We affirm.
 
 I.
 
 2
 On July 17, 1990, a grand jury sitting in the Eastern District of Michigan returned a 24-count indictment against Edward Hanserd and others, charging them with various violations of federal law in connection with the distribution of cocaine. Hanserd was charged with one count of conspiracy to distribute controlled substances (21 U.S.C. Sec. 846), two counts of distribution of controlled substances (21 U.S.C. Sec. 841), two counts of being a felon in possession of a firearm (18 U.S.C. Sec. 922(g)), and five counts of carrying a firearm in relation to a drug trafficking offense (18 U.S.C. Sec. 924(c)).
 
 
 3
 The district court began jury selection in the case of Hanserd and his codefendants on January 7, 1991. The next day, on January 8, Hanserd pled guilty to count one (21 U.S.C. Sec. 846) and counts five and six (18 U.S.C. Sec. 924(c)). In connection with the guilty plea, Hanserd executed a written plea agreement with an accompanying acknowledgement of his constitutional rights.
 
 
 4
 On January 23, 1991, the attorney who had been representing Hanserd since his arraignment filed a motion to withdraw as his counsel. Hanserd, acting pro se, moved to withdraw his guilty plea on February 1, 1991. His motion was denied on February 6, 1991, the day after the district court allowed Hanserd's attorney to terminate his representation. On May 7, 1991, Hanserd's replacement counsel also moved to withdraw the guilty plea, alleging substantially the same matters as were raised by Hanserd in his pro se motion. This motion was denied on May 9, 1991, the date of sentencing.
 
 
 5
 Hanserd was sentenced on count one to 360 months' imprisonment, and to 60 months' imprisonment each on counts five and six. All sentences were ordered to run consecutively. A new attorney was appointed to represent Hanserd for any post-conviction motions and on appeal. On June 29, 1992, this attorney also filed a motion to withdraw Hanserd's guilty plea. It was denied by the district court on August 24, 1992.
 
 II.
 
 6
 Hanserd argues that the district court should have allowed him to withdraw his guilty plea. The withdrawal of guilty pleas is governed by Rule 32(d) of the Federal Rules of Criminal Procedure, which provides:
 
 
 7
 If a motion for withdrawal of a plea of guilty or nolo contendere is made before sentence is imposed, the court may permit withdrawal of the plea upon a showing by the defendant of any fair and just reason. At any later time, a plea may be set aside only on direct appeal or by motion under 28 U.S.C. Sec. 2255.
 
 
 8
 It is well settled that "the movant has the burden of establishing that his presentence motion to withdraw his plea should be granted." United States v. Triplett, 828 F.2d 1195, 1197 (6th Cir.1987). "The decision of the district court to deny a motion for plea withdrawal should be sustained unless the court has abused its discretion." United States v. Spencer, 836 F.2d 236, 238 (6th Cir.1987). In United States v. Goldberg, 862 F.2d 101 (6th Cir.1988), we recognized several factors that a district court should consider in deciding whether to grant a motion under Fed.R.Crim.P. 32(d):
 
 
 9
 (1) whether the movant asserted a defense or whether he has consistently maintained his innocence; (2) the length of time between the entry of the plea and the motion to withdraw; (3) why the grounds for withdrawal were not presented to the court at an earlier time; (4) the circumstances underlying the entry of the plea of guilty, the nature and the background of a defendant and whether he has admitted his guilt; and (5) potential prejudice to the government if the motion to withdraw is granted.
 
 
 10
 Goldberg, 862 F.2d at 103-04. We now apply these factors seriatim to the case at bar.
 
 Assertion of Defense
 
 11
 At the plea proceeding, Hanserd's attorney stated that, while Hanserd would plead guilty, "there are defenses which could have been presented to this court and before this court." (App. 138.) However, none of those alleged defenses were set out by Hanserd's counsel. When questioned by the district court concerning whether he had committed the offenses to which he was pleading guilty, Hanserd's responses established his culpability. While he subsequently maintained his innocence, at no point did he assert any substantive defenses to the charges contained in the indictment.
 
 
 12
 Length of Time Between Entry of Plea and Motion to Withdraw
 
 
 13
 The first motion to withdraw in this case was made over three weeks after Hanserd pled guilty. Although Hanserd claims that he decided to withdraw his guilty plea the day it was entered, he did nothing to advise the district court of this fact. In the meantime, the trial of his codefendants was continuing and, according to his pleadings, Hanserd was consulting with attorneys representing these other individuals during that period. Even factoring in delays caused by Hanserd's having fired his counsel, we do not detect a "swift change of heart" on his part suggesting "that the plea was entered in haste and confusion." Spencer, 836 F.2d at 238. As we noted in Spencer:
 
 
 14
 The rationale for allowing a defendant to withdraw a guilty plea is to permit him to undo a plea that was unknowingly made at the time it was entered. The purpose is not to allow a defendant to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes that he made a bad choice in pleading guilty.
 
 
 15
 Id. at 239 (quoting United States v. Carr, 740 F.2d 339, 345 (5th Cir.1984), cert. denied, 471 U.S. 1004 (1985)). Having had the opportunity to assess the course of his codefendants' trial, tactical considerations may well have influenced Hanserd's attempt to withdraw his plea.
 
 Grounds Not Presented to District Court
 
 16
 Hanserd's primary grounds for withdrawal are that the plea was entered as a result of coercion and his attorney misled him as to the sentence he would receive. However, when he appeared before the district court, Hanserd stated he was satisfied with his attorney's representation. He also asserted that he had not been threatened by anyone, nor had anything been promised to him in exchange for his plea. Hanserd has offered no explanation regarding why he did not inform the district court at the plea hearing about any alleged coercion.
 
 Circumstances Underlying Entry of the Plea
 
 17
 Hanserd admitted to facts indicating his guilt under oath. We note that Hanserd had been convicted of three felonies between 1988 and 1990. He therefore had a certain amount of experience with the criminal justice system, making it less likely that he was unaware of the consequences of pleading guilty. See Spencer, 836 F.2d at 240.
 
 Potential Prejudice to Government
 
 18
 We have held that where a defendant fails to advance a "fair and just reason" the district court should not permit him to withdraw his plea, "the government is not required to establish prejudice that would result from a plea withdrawal[.]" Id. Nonetheless, "the district court may consider potential prejudice in exercising its discretion in considering the motion." Id. Here, the trial of Hanserd's codefendants was well underway at the time he moved to withdraw his plea. The trial ultimately lasted several weeks and included testimony from numerous witnesses from various parts of the country. Having to try Hanserd separately, after he had already acknowledged his guilt, would result in a substantial burden to the government in both time and expense.
 
 
 19
 Accordingly, after considering the five Goldberg factors, we are convinced that the district court did not err in denying Hanserd's motion to withdraw his guilty plea.
 
 III.
 
 20
 Hanserd next contends that, in accepting his guilty plea, the district court failed to comply with Rules 11(c), 11(d), and 11(f) of the Federal Rules of Criminal Procedure.[1]
 
 
 21
 Federal Rule of Criminal Procedure 11(c) provides in pertinent part:
 
 
 22
 Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands, the following:
 
 
 23
 (1) the nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law, including the effect of any special parole or supervised release term, the fact that the court is required to consider any applicable sentencing guidelines but may depart from those guidelines under some circumstances, and, when applicable, that the court may also order the defendant to make restitution to any victim of the offense[.]
 
 
 24
 Hanserd claims that the district court did not personally address him with regard to the minimum and maximum penalties he faced or inform him of the court's role under the federal sentencing guidelines. He also asserts that the district court never determined that he understood the nature of the charges against him.
 
 
 25
 Pursuant to Rule 11(h), "[a]ny variance from the procedures required by this rule which does not affect substantial rights shall be disregarded." See United States v. Stead, 746 F.2d 355, 356 (6th Cir.1984), cert. denied, 470 U.S. 1030 (1985). Hanserd is correct in claiming that the district court did not personally inform him of the penalties he might incur, or explain to him the charges he faced. However, we are convinced that the court substantially complied with the provisions of Rule 11, and otherwise ensured that Hanserd's plea was made knowingly and voluntarily.
 
 
 26
 During the plea hearing, the district court told Hanserd that if there was anything that he did not understand he could ask either his attorney or the court. (App. 137). His attorney noted that several changes had been made on the "advice of rights" form, which Hanserd initialed in the court's presence. Hanserd stated that he had reviewed the form with his attorney and that he understood its contents. (App. 138). He acknowledged that he and his attorney had engaged in extensive plea negotiations with the government, but that he was pleading guilty against the advice of counsel. (App. 139). Despite this, he said that he was satisfied with his attorney's representation. (App. 140).
 
 
 27
 The district court then had government counsel describe the charges against Hanserd, the evidence the government would rely upon in proving these charges, and the maximum penalties attaching to each offense. The court told him that, if he did not plead guilty, he had a right to a jury trial; Hanserd acknowledged that he understood this. When he did, in fact, plead guilty, Hanserd confirmed that he had not been coerced into doing so.[2] (App. 148). Accordingly, we are persuaded that he made an informed plea and that "the nature and extent of the deviation from Rule 11 was such that it could not have had any impact on the defendant's decision to plead or the fairness in now holding him to his plea." Fed.R.Crim.P. 11 advisory committee's notes to the 1983 Amendment. See also United States v. Williams, 899 F.2d 1526 (6th Cir.1990).
 
 
 28
 Hanserd further asserts that the district court failed to assure that his plea was voluntary pursuant to Fed.R.Crim.P. 11(d), which provides:
 
 
 29
 The court shall not accept a plea of guilty or nolo contendere without first, by addressing the defendant personally in open court, determining that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement. The court shall also inquire as to whether the defendant's willingness to plead guilty or nolo contendere results from prior discussions between the attorney for the government and the defendant or the defendant's attorney.
 
 
 30
 Hanserd argues that, as part of his motion to withdraw the guilty plea, which was made before sentencing, he informed the court that his plea had been coerced and was made involuntarily. However, the record of the plea hearing reveals that the district court advised Hanserd of his constitutional rights. He was then asked by the court whether he was forced to offer a plea, had been "threatened by anyone in anyway," and had "been promised anything other than what we have discussed in this Rule 11 Plea Agreement[.]" He replied in the negative to all of these questions. (App. 148). The court then determined that he "well underst[ood] the consequences of offering guilty pleas." (App. 152). In view of our conclusion that the district court did not err in refusing to let Hanserd withdraw his guilty plea, this record convinces us that he voluntarily pled guilty.
 
 
 31
 Lastly, Hanserd contends that the district court did not comply with Fed.R.Crim.P. 11(f), which provides that, "[n]otwithstanding the acceptance of a plea of guilty, the court should not enter a judgment upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea." However, the record indicates that Hanserd admitted to his criminal conduct. (App. 149-53). His contention therefore is without merit.
 
 IV.
 
 32
 Hanserd next contends that his attorney gave him erroneous advice which induced him to plead guilty. Accordingly, he argues that he was denied effective assistance of counsel.
 
 
 33
 As a general rule,
 
 
 34
 a defendant may not raise ineffective assistance of counsel claims for the first time on direct appeal, since there has not been an opportunity to develop and include in the record evidence bearing on the merits of the allegations. The customary procedure followed in this situation by the various circuits is to permit the defendant to raise his ineffectiveness of counsel claim in a proper post-conviction proceeding under 28 U.S.C. Sec. 2255. When, however, the record is adequate to assess the merits of the defendant's allegations, some courts will consider them.
 
 
 35
 United States v. Wunder, 919 F.2d 34, 37 (6th Cir.1990) (citations omitted). Here, the record is sufficiently developed for us to address Hanserd's contention.
 
 
 36
 Hanserd claims that he relied on his attorney's advice that he would receive no more than ten years' imprisonment if he pled guilty. He asserts that his attorney should have insisted on the preparation of a sentencing guideline worksheet, which would have made it clear that the government actually was seeking a much longer sentence for him.
 
 
 37
 In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court held that, in order to show that counsel was constitutionally ineffective, a defendant must demonstrate that "counsel was not functioning as the 'counsel' guaranteed that defendant by the Sixth Amendment." Id. at 687. Additionally, there must have been error so serious as to deprive the defendant of a fair trial. Id. The Strickland test also applies to instances where a defendant enters a guilty plea upon the advice of counsel. Hill v. Lockhart, 474 U.S. 52 (1985). Aside from showing that counsel's representation fell below an objective standard of reasonableness, the defendant is required to demonstrate there is a reasonable probability that, but for counsel's errors, he would not have pled guilty. Id. at 56-60.
 
 
 38
 We already have determined that Hanserd voluntarily pled guilty; indeed, he did so against the advice of counsel. Nonetheless, Hanserd specifically acknowledged that he was satisfied with his attorney's representation. Such a statement on his part was made after he was apprised more than once of the maximum penalty he could receive. Furthermore, it was evident that the parties had not agreed on a computation of sentencing guideline factors; therefore, we do not credit Hanserd's claim that his attorney told him he would not be sentenced to more than ten years' imprisonment.
 
 
 39
 The record of the plea proceedings reveals that Hanserd was made aware that he would be sentenced under the federal guidelines, that the maximum terms he could draw would be up to life imprisonment on count one, five-year consecutive sentences on counts five and six, and that the period to be served would be determined by the district court. Hence, we do not find that his attorney's representation was inadequate.[3]
 
 V.
 
 40
 Hanserd also raises several challenges to the sentencing procedure.[4] First, he asserts that there was an insufficient factual basis upon which the court could accept his guilty plea on counts five and six of the indictment. These counts charged Hanserd with carrying a firearm in relation to drug trafficking activity. Hanserd bases his argument on a statement in the plea record where he indicates that the reasons he possessed a firearm were "nothing pertain[ing] to drugs." (App. 151). However, elsewhere he admitted that he carried a firearm "to protect [himself] from other drug traffickers." (Id.). When asked by the district judge whether "[i]n terms of protecting yourself, did it all relate to any ongoing drug activity," Hanserd replied, "Yes." (Id.). Accordingly, his contention lacks merit.
 
 
 41
 Hanserd next asserts he was not given a two-point offense level reduction for acceptance of responsibility, as promised by the government as part of the plea negotiations. It is true that the probation department did not recommend that Hanserd be awarded such a reduction. However, at sentencing, the district court expressly awarded him two points for acceptance of responsibility. (App. 158).
 
 
 42
 Hanserd also contends that it was error for the district court to have based his guideline sentencing range on a quantity of cocaine exceeding 50 kilograms. The presentence report indicated that "it was not unusual for [Hanserd's drug distribution house] to distribute in excess of 50 kilograms of cocaine over a one month period." (App. 117) (emphasis added). Hanserd's drug distribution conspiracy lasted "[f]rom at least 1984 through July, 1990"[5] (id.), suggesting that it may have trafficked in hundreds of kilograms of cocaine. At the sentencing hearing, Hanserd's attorney was asked by the court whether there were any objections to the presentence report. He stated that, while his client was contesting his guilt (as evidenced by his attempts to withdraw his guilty plea), the objections that were filed were "disputing facts and not--they wouldn't really impact on the guidelines one way or the other[.]" (App. 159). Consistent with his denial of guilt, Hanserd presented no evidence to challenge the quantity of drugs used to compute the guideline range.[6]
 
 
 43
 Furthermore, the district court heard the testimony adduced at the trial of Hanserd's codefendants. Hanserd's drug trafficking activities, and that of the entire conspiracy, were well documented during that proceeding. Evidence was introduced that the conspiracy distributed more than 500 kilograms of cocaine. Such evidence could have been used by the district court in determining Hanserd's sentence. See 18 U.S.C. Sec. 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."). In view of the information the district court had before it, his contention must be rejected.
 
 
 44
 Finally, Hanserd asserts that he should not have been given a four-point offense level enhancement for his role in the offense pursuant to United States Sentencing Guidelines Sec. 3B1.1(a) (Aggravating Role).[7] In assessing Hanserd's role in the conspiracy, the district court had the benefit of the presentence report, his admissions, and all of the evidence procured during the trial of his codefendants. Given such information, we cannot say that the court's decision to increase Hanserd's offense level was clearly erroneous.
 
 
 45
 AFFIRMED.
 
 
 
 [1]
 It appears that Hanserd did not raise these issues in the district court
 
 
 [2]
 Additionally, in the constitutional rights form that Hanserd reviewed and signed, he acknowledged that he had received and had read a copy of the indictment and understood the nature of the charges. He further acknowledged that he was aware of the maximum penalties. The Rule 11 Agreement, which also was reviewed and signed by Hanserd, accurately stated the maximum possible penalties for each of the offenses to which he was pleading guilty
 
 
 [3]
 Hanserd raises additional arguments to the effect that the district court should have allowed the record to have been supplemented so that he could show he did not plead guilty knowingly, due to his attorney's deficiencies. However, Hanserd's "[s]olemn declarations in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 74 (1977). Consequently, we find that the district court did not abuse its discretion in acting as it did
 
 
 [4]
 Except for possibly the acceptance of responsibility issue, it appears that Hanserd did not preserve any of these issues in the district court
 
 
 [5]
 Hanserd, himself, was incarcerated in June 1989
 
 
 [6]
 At the plea hearing, however, Hanserd admitted to distributing "multiple kilos ... of cocaine" from 1984 to 1989 as part of a conspiracy. (App. 149)
 
 
 [7]
 We note that no objection was made to this enhancement at the time of sentence