**In re Edward HANSERD, Movant.**

No. 96–8051.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 4, 1997.

Decided Aug. 25, 1997.

Edward Hanserd, Terre Haute, IN, pro se.

Eric M. Jaegers (argued and briefed), Louisville, KY, for Petitioner.

Kathleen Moro Nesi (argued and briefed), Asst. U.S. Attorney, Office of the U.S. Attorney, Detroit, MI, for Respondent.

Before: MARTIN, Chief Judge, NORRIS and MOORE, Circuit Judges.

· MOORE, J., delivered the opinion of the court, in which MARTIN, C.J., joined. NORRIS, J. (p. 935), delivered a separate opinion concurring in the result.

MOORE, Circuit Judge.

Movant Edward Hanserd, a federal prisoner, requests permission to file a second motion to vacate his sentence under 28 U.S.C. § 2255. For the reasons discussed below, we hold that our permission is not necessary in this case.

## I. FACTS

In 1991, Hanserd pleaded guilty to one count of conspiracy to distribute cocaine and two counts of using a firearm in a drug trafficking offense, in violation of 21 U.S.C. § 846 and 18 U.S.C. § 924(c), respectively. *See* J.A. at 18–19, 21–22 (Indictment); J.A. at 34 (Judgment in Criminal Case). Hanserd received consecutive sentences of thirty years of imprisonment on the conspiracy count and five years on each of the firearms charges, for a total of forty years.[1] J.A. at 35. A panel of this court affirmed the conviction and sentence in an unpublished opinion. *United States v. Hanserd,* 1993 WL 428907 (6th Cir. Oct.21, 1993), *cert denied,* 510 U.S. 1140, 114 S.Ct. 1125, 127 L.Ed.2d 433 (1994).

In May 1995 Hanserd filed a motion to vacate his sentence under 28 U.S.C. § 2255, arguing that his drug conviction violated the Double Jeopardy Clause. The district court denied the motion in July of that year, and we again affirmed on appeal. *Hanserd v. United States,* 1996 WL 316491 (6th Cir. June 10, 1996).

While that appeal was pending, two events occurred in Washington that are critical to this case. On December 6, 1995, the Supreme Court announced its decision in *Bailey v. United States,* —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995); on April 24, 1996 the President signed into law the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 (1996) [hereinafter "AEDPA" or "the Act"]. *Bailey* held that the lower courts, this circuit included, had been sustaining convictions under § 924(c) for conduct that was not illegal. The AEDPA, among its many provisions, places new restrictions on the rights of prisoners to file more than one motion to set aside their convictions or sentences under 28 U.S.C. § 2255 and requires that a prisoner get permission from the court of appeals before filing a successive motion. Hanserd filed a motion with this court on November 6, 1996 seeking an order authorizing the district court to consider a second or successive § 2255 motion based upon the intervening *Bailey* decision. Hanserd now argues that under *Bailey* the gun-related conduct for which he is to serve ten years in prison was never a crime; the government replies that, even if that is the case, the AEDPA has eliminated Hanserd's right to seek relief under § 2255. We have jurisdiction over this motion under 28 U.S.C. § 2255. *See* 28 U.S.C. § 2244(b)(3).

## II. DISCUSSION

This case presents us primarily with the question of whether AEDPA's new restriction on filing multiple § 2255 motions "is the type of provision that should govern cases arising before its enactment." *Landgraf v. USI Film Prods.,* 511 U.S. 244, 280, 114 S.Ct. 1483, 1504, 128 L.Ed.2d 229 (1994). Because Congress has not expressed any clear intent as to the answer to this question, we must resort to *Landgraf*'s default rules to decide the question. We must first determine whether the new legislation makes any changes to the controlling law. We must then decide whether, in light of any change, applying the relevant new law would attach new legal consequences to conduct antedating the Act's passage such that applying it would have impermissible retroactive effect.

---

1. The court additionally imposed a $50 special assessment for each count and five years of supervised release. J.A. at 35–36.

*Id.* We begin, then, with a comparison of how Hanserd's claim would fare procedurally under the pre- and post-AEDPA law.

## A. Federal Habeas Corpus vs. 28 U.S.C. § 2255 Motions

The two common federal procedures for relief from illegal confinement—application for a writ of habeas corpus, under 28 U.S.C. §§ 2241, 2244, and motion under § 2255, are, although similar in many ways, distinct: a § 2255 motion is not a petition for a writ of habeas corpus. *United States v. Hayman,* 342 U.S. 205, 220, 72 S.Ct. 263, 272, 96 L.Ed. 232 (1952) ("[A § 2255 action] is not a habeas corpus proceeding."). *See* RULES GOVERNING SECTION 2255 PROCEEDINGS FOR THE UNITED STATES DISTRICT COURTS [hereinafter " § 2255 RULES"] 1 Advisory Committee Notes (noting that "the person seeking relief from federal custody files a motion to vacate, set aside, or correct sentence, rather than a petition for habeas corpus"). Section 2255 is, rather, a statutory remedy that Congress enacted to supplant habeas corpus for federal prisoners. *Hayman,* 342 U.S. at 215, 72 S.Ct. at 269. The reasons for the provision are clear. Because at the time a court could grant a habeas corpus petition only to a prisoner within its geographical jurisdiction,[2] 28 U.S.C. § 2241(a), (d); *Hayman,* 342 U.S. at 220, 72 S.Ct. at 272 the small number of district courts that happened to have major federal prisons in their jurisdictions were, prior to § 2255's enactment, swamped with habeas applications by federal prisoners. *Id.* at 213–14 & n. 18, 72 S.Ct. at 268–69 & n. 18; *id.* at 217 n. 25, 72 S.Ct. at 271 n. 25. In addition, because federal prisoners are often incarcerated far from the scene of their crimes and from the courts that convicted and sentenced them, court records and potential witnesses would often be located thousands of miles from the court examining the habeas petition. *Id.* at 213–14, 72 S.Ct. at 268–69; *id.* at 217 n. 25, 72 S.Ct. at 271 n. 25. Congress therefore, following the Judicial Conference's recommendation, enacted § 2255 largely to allow the court that imposed sentence, rather than a court that happened to be near a prison, to hear a collateral attack on that sentence. *Id.* at 217 n. 25, 219, 72 S.Ct. at 271, n. 25, 272. *See generally id.* at 210–19, 72 S.Ct. at 272; § 2255 RULE 1 Advisory Committee Notes. Section 2255 additionally gives the court more flexibility in fashioning a remedy by authorizing it to "vacate, set aside or correct the sentence"; the remedy possible in habeas writ has traditionally been given a more limited scope. *See* § 2255 RULE 4 Advisory Committee Notes ("According to the Senate committee report the purpose of the bill was to make the proceeding a part of the criminal action so the court could resentence the applicant, or grant him a new trial. (A judge presiding over a habeas corpus action does not have these powers.)") (quoting *Developments in the Law—Federal Habeas Corpus,* 83 HARV. L. REV. 1038, 1208 n. 360 (1970)).[3]

**2.** The Supreme Court has since held that a federal court may grant a habeas writ so long as the prisoner's custodian is within the court's jurisdiction. *Braden v. 30th Judicial Circuit Court,* 410 U.S. 484, 499–500, 93 S.Ct. 1123, 1131–32, 35 L.Ed.2d 443 (1973). *See Wright v. United States Bd. of Parole,* 557 F.2d 74, 77 (6th Cir. 1977) ("The habeas power of federal courts over prisoners in federal custody has been confined by Congress ... to those district courts within whose territorial jurisdiction the custodian is located.") (citing *Braden*). The custodian for this purpose is the prison warden or director, rather than the executive with ultimate statutory authority. *Yi v. Maugans,* 24 F.3d 500, 507 (3d Cir.1994); *Chatman–Bey v. Thornburgh,* 864 F.2d 804, 810–11 (D.C.Cir.1988) (en banc).

**3.** Although the courts have in recent years taken a broader approach to the type of relief available in federal habeas corpus, it is still true that the range of remedies possible under § 2255 is broader than that under habeas. *Compare* LARRY W. YACKLE, POSTCONVICTION REMEDIES § 148 (1981 and 1996 Supp.) (noting that § 2255 and its rules "authorize virtually any relief appropriate in the circumstances of the particular case"), *with* JAMES S. LIEBMAN AND RANDY HERTZ, 2 FEDERAL HABEAS CORPUS PRACTICE AND PROCEDURE §§ 33.1–33.4 (2d ed.1994) (discussing habeas remedies); *Raley v. Parke,* 945 F.2d 137, 143 (6th Cir.1991) (asserting that federal habeas court has no authority to order state court to conduct evidentiary hearing); *Barry v. Brower,* 864 F.2d 294, 300–301 (3d Cir. 1988) (modifying district court's grant of habeas relief because "[a] habeas court does not have power to directly intervene in the process of the [state] tribunal which has incorrectly subjected the petitioner to the custody of the respondent official."). Although a federal court's modification of another federal court's judgment would not raise the same federalism concerns that cases involving state prisoners do, inter-district comity and practicality suggest that the original sentencing court is better positioned to reevaluate a federal prisoner's conviction and sentence. *See* § 2255 RULE 4(a) (motion should be presented to

## B. Whether *Bailey* Claims are Reviewable on Collateral Review

■ A federal prisoner who is incarcerated for conduct that is later held not to be criminal[4] may obtain his freedom through a motion under § 2255. *Davis v. United States,* 417 U.S. 333, 346–47, 94 S.Ct. 2298, 2304–05, 41 L.Ed.2d 109 (1974); *Callanan v. United States,* 881 F.2d 229, 231–32 (6th Cir.1989), *cert. denied,* 494 U.S. 1083, 110 S.Ct. 1816, 108 L.Ed.2d 946 (1990). *Callanan* in particular is indistinguishable from the case at bar in this respect. Defendants in that case, father and son, had been convicted of using the mails to defraud the State and citizens of Michigan of certain "intangible rights." 881 F.2d at 232. After their convictions became final, the Supreme Court held in *McNally v. United States,* 483 U.S. 350, 361, 107 S.Ct. 2875, 2882, 97 L.Ed.2d 292 (1987), that the mail fraud statute at issue did not protect such intangible rights and therefore could not support such a conviction. *See* 881 F.2d at 231. Our court held that pursuant to *Davis* the Callanans were entitled to move under § 2255 to vacate their convictions. *Id.* at 230 ("We conclude that *McNally* must be applied retroactively and that the Callanans' mail fraud convictions must be vacated."). *Bailey* is analogous to *McNally,* and *Callanan* therefore is controlling unless AEDPA requires a different result. *Compare United States v. Moore,* 76 F.3d 111, 112 (6th Cir.1996) ("*Bailey* endorsed a narrower definition of 'use' of a firearm than this circuit had previously applied."), *with Callanan,* 881 F.2d at 232 ("Although the lower federal courts had interpreted the words 'scheme or artifice to defraud' as broad enough to include schemes to defraud the public of 'intangible rights' ... *McNally* read the statute as 'limited in scope to the protection of property rights.' "). We therefore hold that prisoners may use § 2255 to advance *Bailey* claims.

■ We must also address the effect of Hanserd's guilty plea on his motion. A voluntary and intelligent guilty plea usually forecloses later attempts to challenge the resulting judgment; the plea serves not only to admit the conduct charged in the indictment but also to concede guilt of the substantive crime. *United States v. Broce,* 488 U.S. 563, 570, 109 S.Ct. 757, 762, 102 L.Ed.2d 927 (1989). *But see id.* at 574–75, 109 S.Ct. at 764–65 (noting exceptions). However, "because a guilty plea is an admission of all the elements of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts." *McCarthy v. United States,* 394 U.S. 459, 466, 89 S.Ct. 1166, 1170, 22 L.Ed.2d 418 (1969). *Accord Broce,* 488 U.S. at 570, 109 S.Ct. at 762. More specifically, a guilty plea is involuntary where the defendant lacks knowledge of one of the elements required for conviction. *Henderson v. Morgan,* 426 U.S. 637, 644–45 & n. 13, 96 S.Ct. 2253, 2257–58 & n. 13, 49 L.Ed.2d 108 (1976); *McCarthy,* 394 U.S. at 471, 89 S.Ct. at 1173; *United States v. Dewalt,* 92 F.3d 1209, 1211 (D.C.Cir.1996) (citing *Henderson*). In *Henderson,* the Court affirmed the grant of a writ of habeas corpus where the defendant had not known when he pleaded guilty to second-degree murder that an intent to kill was an element of the offense, noting that

> [t]here is nothing in this record that can serve as a substitute for either a finding after trial, or a voluntary admission, that respondent had the requisite intent. Defense counsel did not purport to stipulate to that fact; they did not explain to him that his plea would be an admission of that fact; and he made no factual statement or admission necessarily implying that he had such intent. In these circumstances it is impossible to conclude that his plea to the unexplained charge of second-degree murder was voluntary.

426 U.S. at 646, 96 S.Ct. at 2258. *See id.* at 645 n. 13, 96 S.Ct. at 2258 ("A plea may be involuntary ... because [defendant] has such an incomplete understanding of the charge

---

judge who tried the case); § 2255 Rule 4 Advisory Committee Notes ("Because the trial judge is thoroughly familiar with the case, there is obvious administrative advantage in giving him the first opportunity to decide whether there are grounds for granting the motion.").

**4.** As discussed below, *Bailey* means that the particular conduct was never criminal, not that it was in effect decriminalized when that decision was announced.

that his plea cannot stand as an intelligent admission of guilt.").

 Here, there is no indication that the necessary connection under *Bailey* between Hanserd's drug offense and his guns existed. The plea colloquy indicates that Hanserd pleaded guilty to using, rather than to carrying, a firearm during a drug offense. J.A. at 139. Although the government argues that the convictions should be upheld because the indictment charged Hanserd under the carry as well as the use prong of § 924(c), we cannot agree. The indictment charged that Hanserd on two occasions (June 14 and 15 of 1988) "carried, used and possessed" a gun "during and in relation to a drug trafficking crime, that is, possession with intent to distribute and the distribution of controlled substances." J.A. at 21–22 (Indictment Counts 5, 6). In order to obtain a conviction under § 924(c), the government must prove the predicate drug crime specified in the indictment. *United States v. Sims*, 975 F.2d 1225, 1233 (6th Cir.1992); *United States v. Henry*, 878 F.2d 937, 943 (6th Cir.1989).[5] There was no evidence that Hanserd was engaged in any substantive drug crime while he carried the guns; when the police arrested him on these two occasions they found no drugs. *See United States v. Riascos–Suarez*, 73 F.3d 616, 623 (6th Cir.) ("[T]he firearm was not carried 'in relation to' possession of cocaine, since no drugs were found in the car with the weapon."), *cert. denied*, —— U.S. ——, 117 S.Ct. 136, 136 L.Ed.2d 84 (1996). And, although his guilty plea stands as an admission that he committed some predicate drug offenses on June 14 and 15, it in no way indicates a nexus between those crimes and carrying the guns; it could merely indicate, for example, that Hanserd stored the guns and the drugs at his house. *See Riascos–Suarez*, 73 F.3d at 622 (noting that pre-*Bailey* precedent equated storage with use).

On the record before us, then, the carry prong cannot support either of the § 924(c) convictions. Hanserd's convictions rest on his pleading guilty to violating the use prong of § 924(c) and, because that plea was not made with an adequate understanding of the law, it was not voluntary and does not bar a collateral attack on his § 924(c) conviction.[6]

That *Bailey* had yet to be decided when Hanserd entered his plea serves only to strengthen this conclusion, because it makes it clear that the court, counsel, and accused were all operating under what we now know was a too-inclusive view of § 924(c)'s reach. The overly broad interpretation of the scope of § 924(c) was as wrong before *Bailey* as it is now. *Bailey* did not change the statute's meaning; it clarified what § 924(c) has always meant since its enactment. *See Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 313 n. 12, 114 S.Ct. 1510, 1519 n. 12, 128 L.Ed.2d 274. (1994) ("[W]hen this Court construes a statute, it is explaining its understanding of what the statute has meant continuously since the date when it became law.... Thus, it is not accurate to say that the Court's decision ... 'changed' the law that previously prevailed in the Sixth Circuit when this case was filed. Rather, ... [the] opinion finally decided what [the statute] had *always* meant and explained why the Courts of Appeals had misinterpreted the will of the enacting Congress."). When the district court accepted Hanserd's plea, it had a duty under Federal Rule of Criminal Procedure 11 to ensure that the plea was both voluntary, FED. R. CRIM. P. 11(d), and supported by a sufficient factual basis, FED. R. CRIM. P. 11(f). In light of *Bailey*, the district court failed in that duty—albeit by no fault of its own—and a motion for relief under § 2255 may be appropriate. *See Fontaine v. United States*, 411 U.S. 213, 215, 93 S.Ct. 1461, 1462, 36 L.Ed.2d 169 (1973) (per curiam) (vacating

---

**5.** The government never charged Hanserd with any substantive drug offense in connection with either of the § 924(c) counts, in apparent violation of *Henry*. The posture of this case gives us no reason to address the significance of this peculiarity, other than to note that it makes it more difficult to determine what, exactly, the predicate offenses were.

**6.** That Hanserd had competent counsel does not affect this outcome. *See Henderson*, 426 U.S. at

644, 96 S.Ct. at 2257 ("We ... accept [the state's] characterization of the competence of [the prisoner's] counsel and of the wisdom of their advice to plead guilty to a charge of second-degree murder.") We note that *Henderson* is by no means the only case in which the Court has held that a guilty plea does not bar collateral attack on the conviction. *See Blackledge v. Allison*, 431 U.S. 63, 82–83, 97 S.Ct. 1621, 1633–34, 52 L.Ed.2d 136 (1977); *id.* at 73 n. 3, 97 S.Ct. at 1629 n. 3 (listing cases).

judgment under § 2255 where guilty plea may not have been voluntary); *McCarthy*, 394 U.S. at 472, 89 S.Ct. at 1173 (holding on direct appeal that "a defendant whose plea has been accepted in violation of Rule 11 should be afforded the opportunity to plead anew"); *Peavy v. United States*, 31 F.3d 1341, 1347 (6th Cir.1994) (reversing dismissal of § 2255 motion and remanding for district court to determine whether prisoner should be allowed to withdraw guilty plea in light of Rule 11 violation). *Cf. United States v. Timmreck*, 441 U.S. 780, 784–85, 99 S.Ct. 2085, 2087–88, 60 L.Ed.2d 634 (1979) (refusing to answer question of whether § 2255 relief is available to address a technical Rule 11 violation accompanied by "other aggravating circumstances.").

Most of our sister circuits that have addressed this issue have reached this same conclusion that *Bailey* can apply to overturn convictions that followed guilty pleas. Several have vacated convictions, on direct appeal and under § 2255, despite the guilty pleas. *See United States v. Barnhardt*, 93 F.3d 706, 708 (10th Cir.1996) (allowing § 2255 attack after pre-*Bailey* guilty plea because "an exception to the rule barring collateral attack on a guilty plea applies when the defendant had 'the right not to be haled into court at all upon the felony charge'") (quoting *Broce*, 488 U.S. at 574–75, 109 S.Ct. at 764–65); *Dewalt*, 92 F.3d at 1214–15 (on direct appeal vacating guilty plea because of Rule 11 violation, under *Henderson*); *United States v. Andrade*, 83 F.3d 729, 731 (5th Cir.1996) (on direct appeal vacating conviction that followed pre-*Bailey* guilty plea); *United States v. Abdul*, 75 F.3d 327, 329–30 (7th Cir.) (same), *cert. denied*, —— U.S. ——, 116 S.Ct. 2569, 135 L.Ed.2d 1085 (1996). *See also Chambers v. United States*, 106 F.3d 472, 475 (2d Cir.1997) (allowing § 2255 attack on pre-*Bailey* guilty plea). Others, including our own, have indicated that a guilty plea made before *Bailey* does not bar later attack on the conviction, while upholding the conviction

on other grounds. *See United States v. Riascos–Suarez*, 73 F.3d 616, 623 (6th Cir.) (on direct appeal upholding conviction following pre-*Bailey* guilty (*Alford*[7]) plea because evidence could support conviction under "carry" prong of § 924(c)), *cert. denied*, —— U.S. ——, 117 S.Ct. 136, 136 L.Ed.2d 84 (1996). *See also United States v. Mitchell*, 104 F.3d 649, 652 (4th Cir.1997) (rejecting, on basis of Rule 11, government's argument that guilty plea is unassailable but finding adequate factual basis for guilty plea). Only the Eighth Circuit has taken a contrary stand, in a decision that did not discuss *Henderson*. *Bousley v. Brooks*, 97 F.3d 284, 288 & n. 4 (8th Cir.1996), *petition for cert. filed* (U.S. Mar. 18, 1997) (No. 96–8516). *But see Hohn v. United States*, 99 F.3d 892, 894 & n. 1 (8th Cir.1996) (McMillian, J., dissenting) (rejecting *Bousley* holding), *petition for cert. filed* (U.S. May 12, 1997) (No. 96–8986). Because we believe that *Henderson* controls, we hold that a guilty plea entered before the Court announced *Bailey* does not bar a defendant from later asserting that his conduct is shown by *Bailey* not to have been within the scope of § 924(c).[8]

## C. The Change in the Law Regarding Successive Motions

### 1. The Old Law: Abuse of the Writ

■ Under the old § 2255 jurisprudence, a federal prisoner who wished to bring a new claim in a second (or subsequent) § 2255 motion had to convince a district court either that the motion did not constitute "abuse of the writ" or that he had made a "colorable showing of factual innocence." *McCleskey v. Zant*, 499 U.S. 467, 495, 111 S.Ct. 1454, 1470, 113 L.Ed.2d 517 (1991). *See also Schlup v. Delo*, 513 U.S. 298, 314–15, 115 S.Ct. 851, 860–61, 130 L.Ed.2d 808 (1995). *See* § 2255 RULE 9(b) (allowing dismissal of motion found to "constitute[ ] an abuse of the procedure"). *Hanserd* satisfies both of these criteria. At its strictest,[9] the abuse-of-the-writ

---

**7.** *See North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

**8.** We note, too, that the *Bousley* court's contention that it should not upset the result of a plea bargain ignores the discussion of the issue in *Blackledge v. Allison*, 431 U.S. 63, 70–76, 97 S.Ct. 1621, 1626–30, 52 L.Ed.2d 136 (1977), in

which the Supreme Court concluded that a habeas writ might issue to vacate a conviction entered pursuant to a plea agreement. *Id.* at 74–75, 82–83, 97 S.Ct. at 1629–30, 1633–34.

**9.** Neither this court nor the Supreme Court has held that the *McCleskey* standard applies to § 2255 motions. *McCleskey* itself involved a ha-

doctrine allows a second motion containing a new claim where the inmate can "show cause for failing to raise [the issue in the first motion] and prejudice therefrom." *McCleskey*, 499 U.S. at 494, 111 S.Ct. at 1470. When Hanserd filed (and appealed) his first motion, it would have been futile for him to argue that his conduct did not support a conviction under § 924(c): we had endorsed a broad definition of "use" under that statute and had in fact specifically rejected the claim in his direct appeal. *United States v. Hanserd*, 1993 WL 428907, at *6. *See Moore*, 76 F.3d at 112. Hanserd has therefore demonstrated cause for his failure to raise the issue in his first motion. *Callanan*, 881 F.2d at 231. Furthermore, he has made a sufficient showing both of prejudice and of actual innocence: it appears from the record that he pleaded guilty and was convicted for conduct that is, under *Bailey*, not criminal. We therefore conclude that under the old abuse-of-the-writ standard Hanserd would be entitled raise his *Bailey* claim in a § 2255 motion.[10]

## 2. The New Law

■ The AEDPA standard would not allow such a § 2255 motion. Under the new law a prisoner may file a second § 2255 motion only if the appropriate court of appeals certifies the motion either to contain newly discovered exculpatory evidence or to be based on "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(1), (2).[11] There is no newly discovered evidence in this case, and Hanserd does not claim that there is. Hanserd does argue that *Bailey* announced a new rule of constitutional law, but this argument is unconvincing. *Bailey* decided nothing more than the proper meaning of "use" in § 924(c). *See* —— U.S. at ——, 116 S.Ct. at 505 ("We granted certiorari to clarify the meaning of 'use' under 924(c)(1)"). In fact, the Court's opinion never mentions the Constitution. Thus, although the opinion may have constitutional dimensions,[12] *Bailey* did not announce a new rule of constitutional law. *Accord In re Vial*, 115 F.3d 1192, 1195 (4th Cir.1997) (en banc); *United States v. Lorentsen*, 106 F.3d 278, 279 (9th Cir.1997) (collecting cases). Under the AEDPA standard, we would have to deny Hanserd's request to file this § 2255 motion.

This is not, however, the end of our inquiry. If "the remedy by [§ 2255] motion is inadequate or ineffective to test the legality of his detention," then a federal prisoner may apply for a writ of habeas corpus under 28 U.S.C. §§ 2241, 2244. 28 U.S.C. § 2255. If

---

beas corpus petition; we assume that this same cause-and-prejudice standard, rather than the more permissive one enunciated in *Sanders v. United States*, 373 U.S. 1, 18, 83 S.Ct. 1068, 1078, 10 L.Ed.2d 148 (1963), which was a § 2255 case, applies to these motions. Because Hanserd meets the *McCleskey* standard he perforce meets the *Sanders* standard, and there is no reason for us to decide the issue here. *Cf. United States v. Flores*, 981 F.2d 231, 234 (5th Cir.1993) (applying *McCleskey* to § 2255 motion).

**10.** This discussion eliminates any need to address the Hanserd's apparent failure to raise the issue at trial, *see United States v. Hanserd*, 1993 WL 428907, at *6 & n. 4, because that, too, is excused for cause and prejudice. *McCleskey*, 499 U.S. at 493, 111 S.Ct. at 1469. *See* Henry J. Friendly, *Is Innocence Irrelevant? Collateral Attack on Criminal Judgments*, 38 U. CHI. L. REV. 142, 160 (1970) (arguing that procedural hurdles based on the desire for finality in criminal cases should give way where "a convicted defendant makes a colorable showing that an error, whether 'constitutional' or not, may be producing the continued punishment of an innocent man") (footnote omitted).

**11.** Section 2255 contains two sets of numbered paragraphs; the citation is to the second set.

**12.** The Court's conclusion that the evidence in the record was insufficient to support Bailey's conviction for use under § 924(c)(1) would presumably have rendered his continuing incarceration on that charge unconstitutional, had it been necessary to reach such an issue. *See Jackson v. Virginia*, 443 U.S. 307, 322, 99 S.Ct. 2781, 2790, 61 L.Ed.2d 560 (1979) ("A challenge to a state conviction brought on the ground that the evidence cannot fairly be deemed sufficient to have established guilt beyond a reasonable doubt states a federal constitutional claim."); *Thompson v. City of Louisville*, 362 U.S. 199, 206, 80 S.Ct. 624, 628, 4 L.Ed.2d 654 (1960) (holding that it is "a violation of due process to convict and punish a man without evidence of his guilt"); *Hohn v. United States*, 99 F.3d 892, 895 (8th Cir.1996) (McMillian, J., dissenting), *petition for cert. filed* (U.S. May 12, 1997) (No. 96–8986). *Bailey* did not, of course, itself establish these principles.

AEDPA bars Hanserd from raising his *Bailey* issue in a § 2255 motion, he could file a habeas petition pursuant to this provision. *See Sanders v. United States,* 373 U.S. 1, 14–15, 83 S.Ct. 1068, 1076–77, 10 L.Ed.2d 148 (1963) ("A [federal] prisoner barred by res judicata would seem as a consequence to have an 'inadequate or ineffective' remedy under § 2255 and thus be entitled to proceed in federal habeas corpus—where, of course, § 2244 applies.") (citation omitted); *Cohen v. United States,* 593 F.2d 766, 771 & n. 12 (6th Cir.1979) (allowing federal inmate to use habeas corpus where § 2255 remedy inadequate). *See also Felker v. Turpin,* —— U.S.——, —— U.S. ——, ——, 116 S.Ct. 2333, 2340, 135 L.Ed.2d 827 (1996) ("The new restrictions on successive [habeas] petitions constitute a modified res judicata rule, a restraint on what is called in habeas corpus practice 'abuse of the writ.' ").

A § 2241 motion would not be barred by the new restrictions on successive motions and petitions. Section 2244(a) allows a district judge to refuse to entertain a repeat application for the writ by a federal prisoner only "if it appears that the legality of such detention has been determined by a judge or court of the United States on a prior application for a writ of habeas corpus, except as provided in section 2255." As discussed above, Hanserd's previous § 2255 motion was not an application for a writ of habeas corpus; and, in any case, the exception just quoted, which was inserted by AEDPA § 106(a), explicitly states that § 2244(a) should not be read to supersede the provisions of § 2255. Similarly, § 2244(b), which contains new limits similar to those in § 2255 on successive petitions, applies by its terms only to a second or successive application under § 2244 or § 2254. 28 U.S.C. § 2244(b)(2), (b)(3). Hanserd's § 2255 motion was, axiomatically, a motion rather than an application and was filed in district court under § 2255 rather than § 2244 or § 2254. We therefore conclude that if Hanserd is now barred from filing a § 2255 motion, he may raise his *Bailey* claim under § 2241. *Cf. Chambers v. United States,* 106 F.3d 472, 474 (2d Cir.1997) ("We hold that a petition asserting a claim to relief available under 28 U.S.C. § 2255 is not a 'second or successive' application where the prior petition(s) sought relief available only under 28 U.S.C. § 2241.").

### D. Retroactive Effect under *Landgraf*

▇▇▇ With this discussion in mind we now turn to *Landgraf*'s retroactivity analysis. We analyze the case first under the assumption that § 2241 relief is available, and then under a contrary assumption.

#### 1. If Hanserd May File a Petition for Habeas Corpus

If Hanserd may raise his *Bailey* claim in a habeas petition under § 2241, then AEDPA's new restrictions on second § 2255 motions apply to this case. The scope of, and standard for, relief is the same under either provision, at least where the alleged errors occur in the sentencing court. *Sanders,* 373 U.S. at 14, 83 S.Ct. at 1077. *Cf. United States v. Jalili,* 925 F.2d 889, 893 (6th Cir. 1991) (holding that challenge to execution, rather than imposition, of sentence must be brought in habeas petition rather than § 2255 motion). *Landgraf* teaches that a new law that merely demands that a person use a different procedure to vindicate a right seldom raises retroactivity concerns. *See Landgraf,* 511 U.S. at 275, 114 S.Ct. at 1502. Under *Landgraf* it is not significant that under § 2241 the district court located near Hanserd's place of incarceration, rather than the court that originally sentenced him, would adjudicate the request for relief; the statute "simply changes the tribunal that is to hear the case" without affecting Hanserd's substantive rights. *Id.* at 274, 114 S.Ct. at 1501 (citation omitted). We therefore conclude that because § 2241 would provide an equivalent remedy as a § 2255 motion, requiring Hanserd to use the former instead of the latter would not have impermissible retroactive effect under *Landgraf.*

#### 2. If Hanserd May Not File a Habeas Petition

Conversely, if Hanserd may not file a habeas petition under § 2244, then applying AEDPA's new restrictions to this case to prohibit his second § 2255 motion would "attach[ ] new legal consequences to events completed before its enactment," and would therefore have impermissible retroactive ef-

fect. *Landgraf,* 511 U.S. at 270, 114 S.Ct. at 1499. When Hanserd filed his initial § 2255 motion, the law would have allowed him to raise a *Bailey* claim in a second motion, as discussed above. Under AEDPA, however, he may not. Applying the new statute would thus attach a severe new legal consequence to his filing a first motion: he would have lost his right to challenge his sentence. *Burris v. Parke,* 95 F.3d 465, 469 (7th Cir.1996) (en banc). *See Landgraf,* 511 U.S. at 280, 114 S.Ct. at 1504 (statute has retroactive effect where "it would impair rights a party possessed when he acted."); *Union Pacific R.R. v. Laramie Stock Yards Co.,* 231 U.S. 190, 199, 34 S.Ct. 101, 102, 58 L.Ed. 179 (1913) ("The rule [against retroactive application of statutes] is one of obvious justice, and prevents the assigning of a quality or effect to acts or conduct which they did not have or did not contemplate when they were performed."). Because Congress has not expressed an intent that the new Act have such a retroactive effect, we could not apply AEDPA in this way.[13]

The government directs our attention to the Seventh Circuit's opinions in *Roldan v. United States,* 96 F.3d 1013 (7th Cir.1996), and *Nunez v. United States,* 96 F.3d 990 (7th Cir.1996), to support the contention that because Hanserd did not *consciously* (i.e., for strategic reasons) omit the *Bailey* issue from his first petition, he cannot be said to have relied on the old rule and must proceed under AEDPA if at all. We disagree. Judge Easterbrook's conclusion in *Roldan* and *Nunez* ignores both the analytic framework and the holding of *Landgraf.* The central question in that case[14] was whether the 1991 Amendments to Title VII of the Civil Rights Act, which provided for compensatory damages in hostile-work-environment suits, should be applied to misconduct that antedated the new law. 511 U.S. at 283, 114 S.Ct. at 1506. The Court held that it did not apply, even though the conduct at issue had been unlawful for thirty years before the new law's enactment and could previously have supported an award of damages. *Id.* at 282 & n. 35, 114 S.Ct. at 1506 & n. 35; *id.* at 297, 114 S.Ct. at 1509 (Blackmun, J., dissenting). The Court did not speculate as to whether the employer had consciously relied on the old law in allowing discrimination against the plaintiff.[15] Instead, the Court held that the new provision should not be applied because doing so would attach a significant new adverse legal consequence to the conduct such that the defendant might have acted differently had he known of that new consequence. *Id.* at 283, 114 S.Ct. at 1506. Under the old law, inmates were supposed to file § 2255 motions promptly. *See* § 2255 Rule 9(a); *Davis v. Adult Parole Auth.,* 610 F.2d 410, 415 (6th Cir.1979); *Desmond v. United States,* 333 F.2d 378, 381 (1st Cir.1964) ("[A]pplications for relief such as this must be made promptly.... It will not even do for a prisoner to wait any longer than is reasonably necessary to prepare appropriate moving papers...."). Had Hanserd known that AEDPA would change this, and that his initial § 2255 motion would bar a later motion based on a new Supreme Court interpretation of § 924(c), he might well have waited to file that initial motion. Where applying a new statute would attach a serious new adverse legal consequence[16] to pre-enactment

---

**13.** Several of our sister circuits have, without substantial analysis, reached a position contrary to ours and applied AEDPA's successive application provisions. *See United States v. Lorentsen,* 106 F.3d 278, 279 (9th Cir.1997) (§ 2255); *Denton v. Norris,* 104 F.3d 166, 167 (8th Cir.1997) (habeas); *Bush v. Singletary,* 99 F.3d 373, 375 (11th Cir.1996) (per curiam) (habeas); *Liriano v. United States,* 95 F.3d 119, 122 (2d Cir.1996) (per curiam) (§ 2255). These cases are, of course, only persuasive authority; since none of them discusses retroactivity, we do not find them persuasive on this issue. *In re Vial,* 115 F.3d 1192, 1198 n. 13 (4th Cir.1997) (en banc), specifically reserved the issue because the parties had not raised it. The three dissenting judges would have reached the issue *sua sponte* and would hold, as we do today, that the new gatekeeping

provision does not apply in cases "in which a prisoner has filed his first § 2255 motion before the AEDPA's effective date and his second thereafter." *Id.* at 1199–1200 (Hall, J. dissenting).

**14.** Indeed, this was the one issue that drew a dissent. *See Landgraf,* 511 U.S. at 296 n. 3, 114 S.Ct. at 1509 n. 3 (Blackmun, J., dissenting).

**15.** It would be hard to imagine a defendant in such a suit arguing that it had consciously relied on its limited liability in permitting its employees to engage in unlawful sexual harassment.

**16.** That the new statute must attach a new legal consequence to the pre-enactment conduct serves to distinguish the examples given in foot-

conduct such that the party affected might have acted differently in light of the new law, *Landgraf* instructs us not to apply the new law.[17]

■ The United States also suggests that the availability of a presidential pardon means that applying the new statute would not impair Hanserd's rights (assuming, still, that a district court could not grant a habeas petition under § 2241). We are unpersuaded. No one has a right to a presidential pardon. *Binion v. United States Dep't of Justice*, 695 F.2d 1189, 1190 (9th Cir.1983). *See* 28 C.F.R. §§ 1.1 *et seq.* (guidelines and procedure for executive clemency); *Herrera v. Collins*, 506 U.S. 390, 413, 113 S.Ct. 853, 867, 122 L.Ed.2d 203 (1993) ("'A pardon is an act of grace ....'") (quoting *United States v. Wilson*, 32 U.S. (7 Pet.) 150, 160, 8 L.Ed. 640 (1833)). To eliminate Hanserd's right to challenge his imprisonment, leaving him with a faint hope for presidential clemency, would impair that right. Furthermore, we doubt that the President is inclined to apply *Bailey* to the facts surrounding every prisoner who asserts a claim that he cannot raise under § 2255. The potential availability of executive clemency, then, does not change our opinion.

■ We also disagree with the government's position that Hanserd should have tried to raise his *Bailey* claim during the brief window between the Court's decision in that case and AEDPA's enactment. The government suggests that Hanserd should have tried to supplement his appeal of his first § 2255 motion in this court. Given our oft-repeated admonitions that appellants should not attempt to raise new issues on appeal, we will not penalize him for failing to do so, even if we sometimes make exceptions to the rule. *See Taft Broadcasting Co. v. United States*, 929 F.2d 240, 243–44 (6th

Cir.1991) (listing Sixth Circuit cases). Similarly, the Supreme Court's familiar refusal to address questions not examined below makes us loathe to say that Hanserd should have raised the *Bailey* issue in a petition for certiorari. *See Holly Farms Corp. v. NLRB*, — U.S. —, — n. 7, 116 S.Ct. 1396, 1402 n. 7, 134 L.Ed.2d 593 (1996). Finally, we will not penalize Hanserd for not immediately filing a second § 2255 motion in district court when *Bailey* was announced, in part because he cannot be charged with notice of AEDPA until its enactment date (by which time it was too late), and in part because the courts have never condoned filing one such motion while another is pending. In short, Hanserd followed the correct procedure under the old law, and we will not hold that against him.

Finally, the government points out that the Court in *Felker*, when it disposed of petitioner's application for a writ, noted that neither of Felker's claims "satisfie[d] the requirements of the relevant provisions of the Act." — U.S. at —, 116 S.Ct. at 2341. This language is far from dispositive. Felker's petition was an abuse of the writ. *Id.* at —, 116 S.Ct. at 2337 (noting that the court of appeals had determined that the petition would have been barred under the old and new standards); *id.* at —, 116 S.Ct. at 2341 (noting that Felker's claims "do not materially differ from numerous other claims made by successive habeas petitioners"); *id.* at —, 116 S.Ct. at 2341 (Stevens, J., concurring). Where the old and the new law lead to an identical result, there is no need to conduct a retroactivity analysis because the new law has not attached any new consequences to pre-enactment conduct or upset settled expectations. *Landgraf*, 511 U.S. at 269–270, 114 S.Ct. at 1498–99. Furthermore, the Court left open the question of whether

---

note 24 of *Landgraf*. *See* 511 U.S. at 269 n. 24, 114 S.Ct. at 1499 n. 24.

**17.** Justice Brandeis's opinion in *United States v. St. Louis, S.F. & T. Ry.*, 270 U.S. 1, 46 S.Ct. 182, 70 L.Ed. 435 (1926), *cited in Landgraf*, 511 U.S. at 274 n. 27, 114 S.Ct. at 1501–02 n. 27 also supports this conclusion. In that case the plaintiff railroad had brought suit against the United States in the Court of Claims; the government's sole defense was that a statute passed after the action had accrued had shortened the applicable

statute of limitations and thereby barred the suit. *Id.* at 2–3, 46 S.Ct. at 183. The Court disagreed, holding that applying the new statute to bar such cases would have impermissible retroactive effect. *Id.* at 3, 46 S.Ct. at 183. Nothing in the opinion suggests that the railroads had delayed filing suit for strategic reasons. Thus, although conscious reliance on an old law is relevant in that it suggests that a party would have acted differently under the old regime than under the new law, it has never been the touchstone of retroactivity analysis.

or not the new restrictions even applied to its original jurisdiction to issue a writ of habeas corpus. *Felker,* —— U.S. at ——, 116 S.Ct. at 2339 ("Whether or not we are bound by these restrictions, they certainly inform our consideration of original habeas petitions."). The Court in *Felker* did not purport to decide whether the gatekeeping restrictions should be applied to cases arising before AEDPA's enactment, and we will not assume that it did so sub rosa.[18]

### E. Which Provision Applies

This analysis leads us to an odd conundrum. Section 2255 explicitly states that federal prisoners may resort to habeas corpus if, and only if, § 2255 relief is inadequate. Our analysis of the AEDPA under *Landgraf* leads us to the contrapositive conclusion: Hanserd may file a new § 2255 motion under the old abuse-of-the-writ standard if, and only if, § 2255 bars him from obtaining relief in district court under § 2241. Hanserd may apply for relief under one, but not both, of these provisions; the question is which one.

Fortunately, Congress has provided our answer. In enacting § 2255, Congress expressed a clear preference that federal prisoners use that provision, rather than habeas corpus, to challenge their confinement, if possible.[19] Hanserd's single post-AEDPA attack should therefore be pursued under § 2255 unless the new Act requires a different result. As discussed above, AEDPA's text, seen through the lens of *Landgraf,* does not require a different result. Nor is allowing inmates in Hanserd's position to move for relief under § 2255 incompatible with Congress's intent in enacting AEDPA. The AEDPA is in large part intended to prevent state and federal inmates from continuing to flood the federal courts with challenges to their confinement and to put a stop to what many see as the use of multiple federal habeas corpus petitions to delay the execution of those sentenced to death. Our holding means that federal inmates will have one post-AEDPA bite at the apple, limited further, for prisoners who filed a § 2255 motion before AEDPA's enactment, by the old abuse-of-the-writ standard.[20] One motion per

18. Similarly, our recent decision in *In re Sims,* 111 F.3d 45 (6th Cir.1997), involved a second § 2255 motion that would have constituted abuse of the writ under the old law, because the new motion relied solely on law that existed before the first motion had been filed. *See id.* at 47 (noting that second petition relies on 1993 amendment to Sentencing Guidelines and on *United States v. Munoz–Realpe,* 21 F.3d 375 (11th Cir.1994)); *United States v. Sims,* No. 92–CR–80647–1 (E.D.Mich. May 11, 1995) (filing of first § 2255 motion). The *Sims* court therefore had no occasion to discuss whether the new gatekeeping provision should apply to cases in which the new law leads to a different result than did the old system.

19. The considerations that led Congress to enact § 2255 are entirely applicable to this situation. If Hanserd and similarly situated inmates proceed under habeas corpus, the very inefficiencies that led Congress to enact § 2255 will occur: courts located near large federal prisons will be inundated with such motions, and witnesses and court records will have to travel thousands of miles to the situs of these habeas hearings, which would be held before a judge unfamiliar with the case. *See* Part II.A, *supra.* Furthermore, we have held that where *Bailey* requires reversal of § 924(c) convictions on direct appeal the proper remedy is often to remand for the district court to decide whether the connection between the defendant's drug trafficking and his possession of a firearm warranted a sentence enhancement

under the sentencing guidelines. *See United States v. Clements,* 86 F.3d 599, 601 (6th Cir. 1996) (direct appeal). If Hanserd's § 924(c) convictions are vacated on a habeas writ, we can find no authority that would allow the sentencing court to reopen the case to modify his sentence on the drug charges, which was imposed as part of a plea agreement that included guilty pleas to the two § 924(c) counts. *See* note 3, *supra.* Section 2255, in contrast, would allow the court to "resentence [Hanserd] or ... correct [his] sentence as may appear appropriate." 28 U.S.C. § 2255. *See Andrews v. United States,* 373 U.S. 334, 339–40, 83 S.Ct. 1236, 1239–40, 10 L.Ed.2d 383 (1963) (remanding for resentencing under § 2255). In this respect, it seems more consistent both with our treatment of this question on direct review and with Congress's intent that the Sentencing Guidelines uniformly penalize those who are involved both with drugs and firearms to allow inmates to proceed under § 2255, rather than habeas corpus. *See Koon v. United States,* —— U.S. ——, ——–——, 116 S.Ct. 2035, 2043–44, 135 L.Ed.2d 392 (1996) (noting that Congress hoped that the guidelines would promote uniformity in sentencing).

20. We do not mean to imply by this that the old doctrine would prevent a prisoner from filing a § 2255 motion that the new law allows, if such a situation is possible.

federal prisoner with a colorable *Bailey* claim is hardly a flood, and offers little opportunity for delay.[21] We therefore hold that a federal prisoner must satisfy the new requirements of 28 U.S.C. § 2255 only if he has filed a previous § 2255 motion on or after April 24, 1996, the date AEDPA was signed into law. As Hanserd's previous § 2255 motion was filed before that date, he does not need to meet this new standard to file a second motion.[22]

## III. PROCEDURE

In order to avoid unnecessary confusion and delay, we will outline the proper procedure for federal inmates who wish to file a second or subsequent § 2255 motion. Inmates who wish to file a second or successive motion to vacate sentence should first file a motion in this court requesting permission under 28 U.S.C. §§ 2244, 2255, regardless of when the first motion to vacate sentence was filed. If the successive motion is proper under AEDPA's gatekeeping provisions, permission to file a motion in the district court will be granted, with the statute of limitations tolled while the motion for permission is before this court. *See* 28 U.S.C. § 2255. If under the holding of this case

permission is not needed because AEDPA's gatekeeping provision cannot be applied pursuant to *Landgraf,* this court will so indicate and will transfer the motion to the proper district court pursuant to 28 U.S.C. § 1631. *Cf.* FED. R.APP. P. 22(a). Motions for permission that fall in neither of these categories— i.e., those that would be barred both under the old and the new law and those that are barred by a previous motion filed after April 24, 1996—will be denied by order of this court. If either a motion requesting permission or a second or successive motion to vacate sentence is erroneously filed in district court, that court should transfer that motion to this court under 28 U.S.C. § 1631. *See In re Sims,* 111 F.3d 45, 47 (6th Cir. 1997).

## IV. CONCLUSION

For the reasons discussed above, we hold that Hanserd does not need our permission to challenge his § 924(c) convictions under 28 U.S.C. § 2255. We accordingly transfer this case to the United States District Court for the Eastern District of Michigan to allow Hanserd to file a motion to vacate, set aside, or correct his sentence under § 2255. *See* § 2255 RULE 2(a).

---

21. Because the pre- and post-AEDPA standards for evaluating successive petitions are so similar, there will likely be few cases—other than those arising under *Bailey*—in which the difference matters. Also, since a § 924(c) conviction is not punishable by death, cases arising under *Bailey* seem unlikely to result in the delay of any executions.

22. The Court's recent decision in *Lindh v. Murphy,* —— U.S. ——, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), does not affect our analysis in this case. *Lindh* held only that the text of AEDPA indicates that "the new provisions of chapter 153 [of 28 United States Code] generally apply only to cases filed after the Act became effective." *Id.* at ——, 117 S.Ct. at 2068. Because the statute is by its terms inapplicable to *Lindh's* case, which was filed before AEDPA's enactment, the Court did not reach the *Landgraf* issue. *See id.* at ——, 117 S.Ct. at 2063 ("Although *Landgraf's* default rule would deny application when a retroactive effect would otherwise result, other construction rules may apply to remove even the possibility of retroactivity (as by rendering the statutory provision wholly inapplicable to a particular

case)...."). *Cf. id.* at ——, 117 S.Ct. at 2070 (Rehnquist, C.J., dissenting) ("Based on [a] weak inference ... the Court concludes that Congress impliedly intended for Chapter 153 not to apply to pending cases. I would go on, and apply our ordinary retroactivity principles, as Congress no doubt assumed that we would.") To the extent that *Lindh* is at all relevant to this case it merely amplifies *Landgraf's* holding that a "clear statement [is] required for a mandate to apply a statute in the disfavored retroactive way." *Id.* at ——, 117 S.Ct. at 2064 (emphasis added) (noting that even Congress's explicit statement that Chapter 154's provisions apply to pending cases may not indicate that those provisions should be applied so as to have a retroactive effect under *Landgraf*). *See id.* at —— n. 4, 117 S.Ct. at 2064 n. 4 ("[C]ases where this Court has found truly 'retroactive' effect adequately authorized by a statute have involved statutory language that was so clear that it could sustain only one interpretation.") (citations omitted). The Court's holding that Chapter 153 generally applies only to cases filed after enactment does not imply that it applies where a retroactive effect would thereby result.

ALAN E. NORRIS, Circuit Judge, concurring.

I concur in the result reached by the panel majority, to the extent that Hanserd should be allowed to file his motion.